**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ZHIZHI XU, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

REUTERS NEWS & MEDIA INC.,

Defendant.

Case No. 1:24-CV-02466-PAE

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

ARGUMENT ..... 5

I. The CAC Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiff Lacks Article III Standing ..... 5

A. Plaintiff's Allegations of a Mere Procedural Violation of CIPA Do Not Confer Standing ..... 6

B. Plaintiff's Only Alleged Harm Does Not Bear a Close Relationship to Harms Traditionally Recognized at Common Law ..... 7

1. The Disclosure of IP Addresses Is Not Highly Offensive to a Reasonable Person ..... 8

2. The Disclosure of Basic Contact Information Is Not Highly Offensive to a Reasonable Person ..... 9

II. The CAC Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Upon Which Relief May Be Granted ..... 11

A. Plaintiff Fails to State a Claim for Violation of CIPA. ..... 12

1. Internet-Based Communications Are Not Covered by CIPA § 638.51 ..... 12

2. IP Address Information Is Not Covered by CIPA § 638.51. ..... 14

3. CIPA § 638.51 Does Not Create Liability for the Collection of Information Necessary to Operate a Website. ..... 15

4. Numerous Cases under the Federal Analogue to CIPA Have Held that Collection of IP Addresses Do Not Violate Pen Register Statutes ..... 17

5. Plaintiff Consented to the Collection of His IP Address ..... 18

6. Plaintiff Cannot Bring a Private Right of Action under CIPA Without Injury ..... 19

CONCLUSION ..... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)....4, 6

*In Re Application of the U.S. of Am. for an Order Authorizing the Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995)....12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2006)....11

*Augustine v. Lenovo (United States), Inc.*,
No. 22-CV-2027-L-AHG, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023)....12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....11

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....4

*Capitol Records Inc. v. Thomas-Rasset*,
No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009)....18

*Casillas v. Transitions Optical, Inc.*,
Case No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. April 23, 2024)....10, 20

*Ciccone v. Cavalry Portfolio Servs., LLC*,
No. 21-CV-2428(JS)(JMW), 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021)....8, 9

*Columbia Pictures Indus. v. Bunnell*,
No. CV-06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)....3, 16, 18

*Cooper v. Bonobos, Inc.*,
No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022)....2, 8, 9

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*,
790 F.3d 411 (2d Cir. 2015)....6

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)....11

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
No. 16-MC-80150-JSC, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016)....8

*Feick v. Fleener*,
653 F.2d 69 (2d Cir. 1981)....................................................................................4

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)....................................................................................4

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (2023) ..........................................................................10, 13

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........................................................... *passim*

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017)................................................................................6, 7

*Lacewell v. Off. of Comptroller of Currency*,
999 F.3d 130 (2d Cir. 2021)....................................................................................6

*Liau v. Weee! Inc.*,
No. 23-cv-1177, 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) ..................................8, 9

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ........................ *passim*

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023)..................................................................12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)...............................................................................................6

*Malibu Media, LLC v. Doe*,
No. 3:19-CV-00808 (CSH), 2019 WL 2537671 (D. Conn. June 20, 2019) .....................8

*Malibu Media, LLC v. Pontello*,
No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)...................................18

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021)....................................................................................6

*Mikulsky v. Noom, Inc.*,
No. 3:23-CV-00285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023) ..................10

*Sazerac Co. v. Falk*,
861 F. Supp. 253 (S.D.N.Y. 1994)...........................................................................4

*Sinclair v. Ziff Davis, LLC*,
454 F. Supp. 3d 342 (S.D.N.Y. 2020).......................................................................4

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016), *as revised* (May 24, 2016)....6

*Streamlined Consultants, Inc. v. Forward Financing LLC*,
No. 21-cv-10838, 2022 WL 766233 (S.D.N.Y. 2022)....11

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016)....7

*Thorne v. Square, Inc.*,
No. 20-cv-5119, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022)....4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....2, 6, 7

*Underhill v. Kornblum*,
No. 16-CV-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017)....15, 17

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008)....9

*United States v. Hernandez*,
No. 19 CR 0097(VM), 2020 WL 3257937 (S.D.N.Y. June 16, 2020)....9

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*,
891 F.3d 712 (8th Cir. 2018)....9

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019)....2, 8, 9

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
464 F. Supp. 3d 634 (S.D.N.Y. 2020)....19

**Statutes**

18 U.S.C. § 2510....3, 15, 17

18 U.S.C. § 3121....*passim*

18 U.S.C. § 3127....13, 17

Cal. Penal Code § 638.50....13, 14, 17

Cal. Penal Code § 638.51....*passim*

Cal. Penal Code § 630....14

Cal. Penal Code § 637.2....3, 19, 20

Pub. L. 99-508, Title III, § 301(a) ........ 13

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ........ 2, 3, 5

Fed. R. Civ. P. 12(b)(6) ........ 2, 3, 11

Rest. (2d) of Torts § 652D ........ 7, 8

## INTRODUCTION

Plaintiff Zhizhi Xu's putative Class Action Complaint ("CAC") alleging violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a)—a copycat of at least 6 other complaints filed by Plaintiff's counsel in the Southern District of New York (and even more elsewhere) over the last several months—is the epitome of a nuisance suit. Flagrantly misinterpreting a narrow California federal district court decision far beyond its factual confines, Plaintiff seeks to upend internet commerce by criminalizing the way the internet functions. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024). Plaintiff urges the Court to hold Defendant Reuters News & Media Inc. ("Reuters") liable under California's penal code for thousands of dollars in statutory damages to each and any California resident who voluntarily decides to click on Reuters.com (the "Website"), solely because Reuters allegedly collects visitors' IP address—data that is voluntarily and necessarily provided to Reuters so that visitors' browsers can properly display the Website. Not only did the California legislature not intend for CIPA to be such a blank check, but a fair reading of the text cannot bear such an interpretation either. Reuters respectfully requests that the CAC be dismissed with prejudice because it fails to include any allegations to demonstrate that Plaintiff has the necessary standing to bring his complaint and because his single count CAC otherwise fails to state a claim as a matter of law.

Out the gate, Plaintiff fails the basic test of alleging any Article III injury in fact. Although Plaintiff alleges that Reuters collected his IP address when he visited the Website, not once does Plaintiff explain how Reuters' alleged actions actually *harmed* him—nor could he. IP addresses are not sensitive information and cannot support a claim for either invasion of privacy or risk of future identity theft. *See, e.g.*, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal.

2020) (alleged violation of CIPA by collecting IP address insufficient to demonstrate standing); *United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."); *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (disclosure of "less sensitive data" such as such as "addresses, phone numbers, . . . email addresses, and IP addresses" does not constitute an injury in fact) (alteration in original). Merely alleging a statutory violation of CIPA—divorced from any actual, concrete harm to Plaintiff—is insufficient to constitute an injury in fact for purposes of Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). Accordingly, Plaintiff's claim should be dismissed under Rule 12(b)(1).

Further, Plaintiff's CAC should separately and independently be dismissed under Rule 12(b)(6) because he fails to state a claim as a matter of law for at least six reasons.

***First***, the text and legislative history of CIPA § 638.51 demonstrate that it was not intended to cover the collection of information over the internet.

***Second,*** the text and legislative history of CIPA § 638.51 demonstrate that it was not intended to cover IP addresses because IP addresses are not "outgoing information" in an electronic communication.

***Third***, Plaintiff's own allegations and courts addressing CIPA § 638.51 make clear that CIPA specifically carved out the conduct at issue here because such activity falls within an exception that permits the use of a "pen register" by a "provider of electronic or wire communications service" to "operate" its "wire or electronic communications service." *See* CIPA § 638.51(b); *Heeger*, 509 F. Supp. 3d at 1190.

***Fourth,*** numerous courts addressing CIPA's federal analogue, the Federal Wiretap Act—from which it models and largely copies—have confirmed that the collection of IP addresses does not violate the law because the sharing of an IP address by a website user is necessary for the website to function. *See Columbia Pictures Indus. v. Bunnell*, No. CV-06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (finding collection of IP address exempt from federal pen register statutes as necessary to operate websites).

***Fifth***, Plaintiff falls into CIPA's exception for use of a pen register with a party's consent because he consented to the collection of his IP address by using the Website, given the Privacy Statement and Cookie Policy that all users agree to when using the Website and the need to voluntarily provide an IP address to access any website.

And, ***sixth,*** Plaintiff fails to allege any actual harm, which is necessary under the plain text of CIPA § 637.2 A private cause of action for an alleged violation of CIPA can only be brought by a plaintiff "who has been ***injured***" by the alleged violation. CIPA § 637.2 (emphasis added). Plaintiff fails to plead this element of his cause of action, and his lack of actual injury is just as fatal to his claim under Rule 12(b)(6) as under Rule 12(b)(1).

For all of these reasons, the Court should dismiss Plaintiff's CAC with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## FACTUAL BACKGROUND

Installation of Trackers: Plaintiff's claim arises from Reuters' alleged installation of Trackers on the internet browsers of website users who visit the Website. CAC ¶ 30. Plaintiff alleges that he visited the Website multiple times and that the Website's code caused three trackers—the Sharethrough, Omnitag, and TripleLift trackers (the "Trackers")—to be installed on Plaintiff's browser. *Id.* ¶¶ 2, 81, 82. Plaintiff alleges that when companies like Reuters "build their

websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions." *Id.* ¶ 56. Plaintiff alleges that the Trackers collect the IP address of a website visitor when the Trackers are running on a user's web browser. *Id.* ¶¶ 34–37, 43–46, 49–51.

Plaintiff alleges that "the code of the Trackers" was incorporated into the Website's code since at least 2020,[1] *id.* ¶ 59, and thus Plaintiff's IP address was collected when he visited the Website between July 2020 and March 2024. *Id.* ¶¶ 34–35, 81–82. Plaintiff does not allege the collection of <u>**any other information**</u> by the Trackers, stating that "[t]he Trackers do not collect the content of Plaintiff's and the Class's electronic communications with the Website." *Id.* ¶ 104

<u>Website's Policies</u>: Although Plaintiff alleges that he "did not provide his prior consent to Defendant to install or use the Tracker on Plaintiff's browser," the Website cited by and relied upon by Plaintiff is to the contrary.[2] The first time a user visits the Website, a conspicuous banner

---

[1] To the extent Plaintiff relies on Website visits before April 1, 2023, his claims are barred by the one-year statute of limitations for CIPA claims. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("Under the CIPA, the applicable statute of limitations is one year."). When a plaintiff's claim relies on discrete interactions with a defendant, as Plaintiff's claims here do, then they are considered single acts and not a continuous violation. *Id.* at 136-138. Therefore, visits by Plaintiff to the Website prior to April 1, 2023 are time barred.

[2] While Plaintiff omits reference to Reuters's Privacy Statement and Cookie Policy, he expressly states that he visited the website "multiple times." CAC ¶ 81. Courts must consider a complaint as a whole, which is "deemed to include . . . documents that, although not incorporated by reference, are integral to the complaint." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citation omitted). Further, when a complaint's allegations "are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (citing *Feick v. Fleener*, 653 F.2d 69, 75 & n.4 (2d Cir. 1981)); *see also Amidax*, 671 F.3d at 147. Finally, a court may also take judicial notice of publicly available facts, including website terms of use and privacy policies. *See Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) ("The publicly available [Facebook] terms [of service] are also subject to judicial notice."); *see also Sinclair v. Ziff Davis, LLC*, 454 F. Supp. 3d 342, 344 n.2 (S.D.N.Y. 2020) (taking judicial notice of Instagram's terms of use and privacy policy); *Thorne v. Square, Inc.*, No. 20-cv-5119, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022) (taking judicial notice of older Square terms of service archived by Wayback Machine).

taking up approximately one-fifth of the computer screen appears, titled "Our Privacy Statement & Cookie Policy." *See* Declaration of Jasmeet K. Ahuja, dated May 24, 2024 ("Ahuja Decl."), Ex. 1 (Screenshot of the Website's landing page with "Our Privacy Statement & Cookie Policy" banner). The banner includes a link to the "Privacy Statement" and "Cookie Policy" as well as a large button labeled "Accept All Cookies" and, directly above the button, a link to "Cookies Settings." *See id.* By clicking "Accept all Cookies," a website user consents to the use of all cookies, including "Trackers" such as those identified by Plaintiff that collect IP addresses. A website user can also choose to "Manage Consent Preferences" through the Website's Privacy Preference Center by clicking on "Cookie Settings" and can choose not to consent to various types of cookies. *See* Ahuja Decl. Ex. 2. Plaintiff does not allege that he attempted to prevent the use of cookies or Trackers in this manner. Rather, Plaintiff alleges that the trackers collected his IP address, which means he provided his consent to being tracked.

<u>Alleged "Harm":</u> The CAC includes no allegations of any harm caused by the purported use of his IP address by Reuters or any third party. Although Plaintiff alleges various ways that an IP address might be used to facilitate targeted advertising, *see id.* ¶¶ 25–29, he does not allege that *he* received any targeted advertising. Even if he had, the CAC fails to identify any purported harm that could be caused by such targeted advertising. Instead, Plaintiff only alleges a ***collection*** of his IP address by Reuters, which Plaintiff alleges amounts to a violation of CIPA's pen register statute and, consequently, an invasion of his privacy. *Id.* ¶¶ 81–90.

## ARGUMENT

### I. The CAC Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiff Lacks Article III Standing

Plaintiff's CAC should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff does not—and cannot—meet his burden to

allege facts that "affirmatively and plausibly suggest" he has standing. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Failure to establish any of these elements—or all them, as in Plaintiff's case here—requires dismissal for lack of jurisdiction.[3] *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

### A. <u>**Plaintiff's Allegations of a Mere Procedural Violation of CIPA Do Not Confer Standing**</u>

Plaintiff fails to demonstrate he has suffered any injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized [] and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Indeed, the Supreme Court and the Second Circuit have repeatedly "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 594 U.S. at 414 (internal

[3] A challenge to standing may be facial or factual. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A challenge is facial where, as here, it is based on the allegations in the complaint and any exhibits attached to the complaint or documents integral to it. *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021). "'The party invoking federal jurisdiction bears the burden of establishing' each element of standing, which 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of litigation.'" *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (citation omitted).

quotations and citation omitted); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017). This is because "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 414.

"Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original); *see also Katz*, 872 F.3d at 118. For a mere statutory violation to qualify as concrete harm for purposes of standing, the violation must bear a "close relationship to a harm traditionally recognized as providing a basis for lawsuits in American courts"—such as invasion of privacy—***if*** the facts supporting such an injury are adequately alleged. *TransUnion*, 594 U.S. at 432; *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) ("[E]ven where, as here, Congress has statutorily conferred legal interests on consumers, a plaintiff only has standing to sue if she can allege concrete and particularized injury to that interest."). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204.

Far from alleging any concrete harm to meet this standard, the only basis Plaintiff proffers for standing is that his IP address—and nothing else—was collected, allegedly violating CIPA. CAC ¶¶ 86, 104. Nor does Plaintiff allege how he could have plausibly been harmed by the mere collection of his IP address. Such a bare procedural violation of CIPA is insufficient to confer standing.

### B. Plaintiff's Only Alleged Harm Does Not Bear a Close Relationship to Harms Traditionally Recognized at Common Law

Plaintiff lacks standing because the disclosure of IP addresses does not implicate traditional privacy interests, nor does the disclosure of basic contact information, such as a person's city, state, and zip code, which Plaintiff alleges can be extrapolated from an IP address. CAC ¶ 24. The only historical or common law analogue applicable here is public disclosure of private facts. Rest.

(2d) of Torts § 652D. To allege an invasion of privacy, a plaintiff must allege facts to show that the collection of the information at issue "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Id.*; *see also Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021). Neither IP addresses nor the city, state, and zip code information Plaintiff alleges someone could extract from an IP address meet this standard.

1. <u>The Disclosure of IP Addresses Is Not Highly Offensive to a Reasonable Person</u>

In following "most courts" "holding that users have no reasonable expectation of privacy in such IP address information," *Kidd*, 394 F. Supp. 3d at 362, this Court has already held that the disclosure of "relatively quotidian private information" like IP addresses does not constitute an injury in fact. *Liau v. Weee! Inc.*, No. 23-cv-1177, 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (Engelmayer, J.). The Court noted that caselaw has not found an injury in fact where the data at issue is "realistically not capable of exploitation by malicious actors." *Id.* (citing *Cooper*, 2022 WL 170622, at *4 (no injury in fact where the information at issue included "less sensitive data" such as "addresses, phone numbers, . . . email addresses, ***and IP addresses***) (alteration in original, emphasis added)).

Courts across the country have long recognized that the collection of basic information, like IP addresses, is not sufficiently analogous to a common law privacy tort to justify standing. *See, e.g.*, *Heeger*, 509 F. Supp. 3d at 1190 (rejecting argument that collection of IP address under CIPA and California privacy torts was sufficiently analogous to common law privacy torts to constitute injury-in-fact); *Malibu Media, LLC v. Doe*, No. 3:19-CV-00808 (CSH), 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address."); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-MC-80150-JSC, 2016 WL

5930275, at *4 (N.D. Cal. Oct. 12, 2016) ("Nor does she have an expectation of privacy with respect to her email address or IP address.") (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Indeed, courts routinely find that IP addresses are virtually akin to the return address information on an envelope dropped in the mail and visible to anyone who sees the envelope, including a third-party, the post-office, which requires such information for processing. *See, e.g.*, *Kidd*, 394 F. Supp. 3d at 362 (finding no reasonable expectation in privacy of IP address because it is akin to information voluntarily disclosed to third parties such as "envelope markings"); *United States v. Hernandez*, No. 19 CR 0097(VM), 2020 WL 3257937, at *20-21 (S.D.N.Y. June 16, 2020) (similar); *United States v. Jean*, 207 F. Supp. 3d 920, 928–29 (W.D. Ark. 2016) (An "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet."), *aff'd*, 891 F.3d 712 (8th Cir. 2018). The same is true here.

2. <u>The Disclosure of Basic Contact Information Is Not Highly Offensive to a Reasonable Person</u>

Nor is the disclosure of basic contact information—such as city, state, and zip code, which Plaintiff alleges can be determined from one's IP address, *see* CAC ¶ 24—highly offensive to a reasonable person. Courts consistently have found that the disclosure of basic contact information is not sufficiently analogous to a traditional common law harm to confer standing under Article III. *See, e.g.*, *Liau*, 2024 WL 729259, at *5 (disclosure of such "quotidian" information as names, email addresses, and physical addresses did not confer standing); *Cooper*, 2022 WL 170622, at *4 (disclosure of, among other things, names, addresses, telephone numbers, and IP addresses did not constitute injury in fact because that information is "generally publicly available"); *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *3 (E.D.N.Y.

Nov. 29, 2021) (disclosure of name, address, and debtor status to debt collection vendor was not "highly offensive to a reasonable person" because the information was not "intensely private information"); *see also Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) ("[C]ourts have found that [disclosure of basic contact] information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.").

Plaintiff's reliance on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (2023), *see* CAC ¶¶ 3, 18, 38, 52—a single out-of-circuit district court case that California courts have already distinguished and rejected in other IP address "pen register" actions—is misplaced. As a factual matter, *Greenley* was not about the collection of IP addresses. Rather, it addressed software installed in applications that allegedly collected and transmitted far more data, including precise geolocation data, search terms, click choices, purchase decisions, and payment methods that allowed the defendant to "track users' locations, spending habits, and personal characteristics" and then sell that information to advertisers. *Greenley*, 2023 WL 4833466, at *1. That is far different from the mere collection of IP addresses, and California state courts have rejected the application of *Greenley* to the collection of IP addresses. *See, e.g.*, *Licea*, 23STCV26148, 2024 WL 1698147, at *3 (Cal.Super. Mar. 13, 2024) (distinguishing *Greenley* as not involving IP addresses and noting IP addresses are not "equivalent to the 'unique fingerprinting' relied upon to find standing and a violation of CIPA); *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. April 23, 2024) (Ahuja Decl. Ex. 3) (distinguishing *Greenley*, nothing that it involved a "data broker that provided software to application developers in return for which it surreptitiously intercepted location data from application users"). As the Los Angeles County Superior Court noted in *Licea*, the interpretation of CIPA which Plaintiff advances here, like in *Licea*, would

"***render[] every single entity voluntarily visited by a potential plaintiff***, thereby providing an IP address for purposes of connecting the website, ***as a violator***." 2024 WL 1698147, at *4 (emphasis added). Simply put, it would open a floodgate of frivolous litigation, further diminishing the court system's "already scarce judicial resources." *Streamlined Consultants, Inc. v. Forward Financing LLC*, No. 21-cv-10838, 2022 WL 766233, at *3 (S.D.N.Y. 2022).

Here, the only injury Plaintiff alleges is the collection of his IP address and the basic contact information that could be backed out from that IP address. Neither piece of information is considered highly offensive if disclosed. Plaintiff therefore fails to allege any concrete injury sufficient to confer Article III standing for an invasion of privacy under § 638.51 of CIPA. His claim should therefore be dismissed for lack of subject matter jurisdiction.

## II. <u>The CAC Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Upon Which Relief May Be Granted</u>

Separately and independently, the CAC should be dismissed because it fails to sufficiently allege a cause of action under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2006) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, Plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (internal modifications omitted). Plaintiff here fails to allege sufficient facts to establish a plausible claim for relief for his single cause of action.

**A. <u>Plaintiff Fails to State a Claim for Violation of CIPA.</u>**

Plaintiff fails to state a claim under CIPA for six separate reasons: (1) CIPA § 638.51 does not apply to internet-based communications; (2) CIPA § 638.51 does not apply to IP address information; (3) CIPA § 638.51 does not apply to information that must be collected for a communication service to operate, and IP addresses are necessary for the internet generally and the Website specifically to operate; (4) courts analyzing Section 638.51's federal analogue, the Pen Register Act, have long held that the collection of IP address information does not violate the federal statute; (5) CIPA does not apply when, as here, a party consents to their information being collected; and (6) Plaintiff has not suffered any actual injury as would be necessary to maintain a private action under CIPA.

1. <u>Internet-Based Communications Are Not Covered by CIPA § 638.51</u>

Plaintiff's claim fails because internet-based communications are not covered by CIPA's telephone-related provisions, including Section 638.51(a). CIPA § 638.51(a) prohibits the "install[ation] or use [of] a pen register or trap and trace device without first obtaining a court order." Courts have repeatedly found that these provisions apply only to "phone technology," *not* the internet. *Licea*, 2024 WL 1698147, at *3–4 (noting that courts have "many times" rejected application of CIPA to the internet); *see also Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1124 (S.D. Cal. 2023) ("Defendant's website is simply not a 'landline telephone.' [CIPA] does not apply to the communications at issue here."); *Augustine v. Lenovo (United States), Inc.*, No. 22-CV-2027-L-AHG, 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023) ("[T]he plain language of [CIPA] limits the applicability of the statute to communications between certain types of telephones, not the internet."); *see also In Re Application of the U.S. of Am. for an Order Authorizing the Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995)

(finding digital analyzer did not violate identical definition[4] of pen register in federal Pen Register Act because law applies only to "devices that are attached to a telephone line"). Yet Plaintiff does not even plead that he accessed the Website through a phone (even though this would not be enough to violate CIPA § 638.51). Instead, he alleges he accessed the Website through a "desktop browser." CAC ¶ 81.

In contrast to these allegations, the sole case relied on by Plaintiff to justify his claim—*Greenley v. Kochava*—alleged that a defendant had used software installed ***on a plaintiff's mobile device*** to collect the plaintiff's "geolocation, communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices." 684 F. Supp. 3d at 1037. In addition to actually involving the use of a cellular telephone as opposed to a desktop browser, the data collected in *Greenley* was far more expansive than simply collecting a website user's IP address at the time a website is accessed. *See Heeger*, 509 F. Supp. 3d at 1190 (noting precise geolocation data and IP address is "apples and oranges for privacy purposes"). And, as noted above, *Greenley* was found by a California state court to be inconsistent with California courts' interpretation of CIPA. *See Licea*, 2024 WL 1698147, at *3 (rejecting *Greenley* as distinguishable from an IP address collection case and finding it out of step with "the current interpretation governing state law").

Because internet-based communications are not covered by CIPA § 638.51, Plaintiff's claim fails.

[4] *Compare* Cal. Penal Code § 638.50(b) *with* Pub. L. 99-508, Title III, § 301(a) (pre-2001 amendment version of 18 U.S.C. § 3127(4) in effect at time of decision in *Cellular Telephone*) ("trap and trace device" means "a device which captures the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electronic communication was transmitted").

2. IP Address Information Is Not Covered by CIPA § 638.51.

The text of CIPA § 638.51 demonstrates that it does not apply to the collection of IP address information. In Section 638.50, the California legislature defined "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." CIPA § 638.50(b). In plain terms—and as alleged by Plaintiff in the Complaint—"a 'pen register' is a 'device or process' that records *outgoing* information." CAC ¶¶ 15–16 (emphasis in original). As Plaintiff himself explained, "[h]istorically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line." *Id.*

In extrapolating the traditional telephone-oriented concept of a pen register to internet-based email communications, Plaintiff alleges that "if a user sends an email, a 'pen register' might record the email address it was sent from, the email address the email was sent to, and the subject line—because this is the user's *outgoing* information." CAC ¶ 17 (emphasis in original). Setting aside Plaintiff's mistaken extrapolation,[5] ***Plaintiff does not allege that Defendant recorded any outgoing information from any of his emails***. Rather, Plaintiff alleges only that Defendant collected Plaintiff's IP address when he visited the Website. Further, Plaintiff makes no effort to explain how the collection of his IP address is at all analogous to "eavesdropping upon private communications." CIPA § 630.

Indeed, according to Plaintiff's own allegations, an IP address "is a unique identifier for a device" belonging to a website user—not outgoing information about an intended recipient of an electronic or wire communication, like a dialed telephone number or a recipient's email address.

[5] Defendant disputes this position, as the equivalent of recording an outgoing telephone number dialed would be recording the email address for the recipient of an outgoing email, not the sender's email address or the subject line of the email.

CAC ¶ 23. Plaintiff also alleges that "[t]hrough an IP address, the specific device's state, city, and zip code can be determined," CAC ¶ 24, but, again, sporadically recording the general location of a website user's device when a user happens to visit a website is not equivalent to recording the ***outgoing*** information from ***every*** telephone call or email regarding the ***recipient*** of an electronic or wire communication. Seemingly forgetting his own allegations, Plaintiff only alleges that the Trackers at issue capture a website ***user's*** IP address—not any identifying information about the recipient of the user's communication as contemplated by the definition of a pen register. Obtaining information about the location of a person who initiates an electronic or wire communication is simply not the same as recording information about the person they are attempting to communicate with. Accordingly, CIPA § 638.51 does not cover the collection of IP addresses.

3. <u>CIPA § 638.51 Does Not Create Liability for the Collection of Information Necessary to Operate a Website.</u>

Moreover, because the collection of IP addresses is necessary to operate the Website, there can be no violation of CIPA. Section 638.51(b)(1) states that a provider of electronic or wireless communication services may use a pen register "[t]o operate, maintain, and test a wire or electronic communication service." CIPA does not explicitly define an "electronic communication service," but CIPA's federal counterpart[6] defines it as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510. This includes websites, because "when a user clicks on a link to a page or a file on a website, the website's web server program receives from the user a request for the page or the file … [which necessarily]

[6] CIPA is modeled on the federal Wiretap Act, and Section 638.51 is specifically modeled on the federal Pen Register Act. Thus, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Underhill v. Kornblum*, No. 16-CV-1598-AJB-WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017). *See also* note 4.

includes the IP address of the user's computer, and the name of the requested page or file, among other things." *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 WL 2080419, at *2 (C.D. Cal. May 29, 2007).

As the court in *Heeger* described it in ruling on a plaintiff's standing to bring claims under CIPA and California common law:

> Telephone subscribers know, after all, that the numbers are used by the telephone company for a variety of legitimate business purposes, including routing calls, and it is doubtful that people in general entertain any actual expectation of privacy in the numbers they dial. [] **So too for an IP address**. Device users should know that [IP address] information is provided to and used by Internet service providers for the specific purposes of directing the routing information.

509 F. Supp. 3d. at 1190 (emphasis added) (internal quotations and citations omitted). To analogize it to a phone call, a website provider like Reuters plays the role both as the recipient of the phone call (here the website request) and the telecom provider who facilitates the connection. Plaintiff's theory would essentially criminalize every internet interaction and every phone call, because whether a telephone company or a website operator, someone besides a plaintiff must always get access to a person's phone number or IP address to connect a phone call or direct web traffic to a website.

Further to this point, by alleging the use of a pen register to collect his IP address, Plaintiff necessarily alleges that he sent electronic communications via his browser to the Website—indeed, the existence of an electronic communication is a prerequisite for any allegation that Reuters recorded information pertaining to an electronic communication. Because Plaintiff alleges that the Website and related servers facilitated his electronic communications, the Website and servers must also qualify as an "electronic communications service" under CIPA § 638.51. Accordingly, the alleged use of Trackers to record Plaintiff's IP address cannot be construed as a violation under CIPA because they fall squarely under CIPA § 638.51(b)(1)'s exception for the use of a "pen

register" "***[t]o operate, maintain, and test a wire or electronic communication service***" by allowing Reuters to "operate" the Website.

4. Numerous Cases under the Federal Analogue to CIPA Have Held that Collection of IP Addresses Do Not Violate Pen Register Statutes

Numerous courts analyzing the federal analogue to CIPA, the Pen Register Act, have held that collection of IP addresses does not violate the Act because the collection of IP addresses is necessary for the internet to operate. CIPA is lifted heavily from the Pen Register Act. *Compare* Cal. Penal Code § 638.51(a) ("[A] person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53."), *with* 18 U.S.C. § 3121(a) ("[N]o person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title. . . ."); *compare* Cal. Penal Code § 638.50(b) ("'Pen register'" means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.") *with* 18 U.S.C. § 3127(3), (4) (identical). As a result, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Underhill v. Kornblum*, No. 16-CV-1598-AJB-WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

The federal Pen Register Act does not apply to the collection of IP addresses because IP addresses must necessarily be transmitted to a website for the internet to function. For example, in resolving a preservation motion brought by plaintiffs related to information stored in a computer's RAM, defendants argued that plaintiffs' motion be denied because doing so would be in violation of the Pen Register Act. In dispensing with defendant's arguments, the Central District Court of California held that "because defendants already and necessarily capture" the plaintiffs' IP addresses as part of the website request, it qualifies under the Pen Register Act's exception for

use "relating to the operation, maintenance, and testing of a wire or electronic communication service." *Columbia*, 2007 WL 2080419, at *11. Similarly, the District Court of Minnesota found in a case addressing whether the federal Pen Register Act applied to computers in a "peer-to-peer" network that "[i]f [the Pen Register Act] did apply [to the collection of IP addresses], then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records Inc. v. Thomas-Rasset*, No. CIV 06-1497(MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009). The Eastern District of Michigan likewise found that there was no violation of the Pen Register Act because the plaintiff voluntarily visited the website, which necessarily required the plaintiff to provide his IP address so the website could function. *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *1 (E.D. Mich. Nov. 19, 2013).

This Court should apply these decisions regarding CIPA's virtually identical federal analogue to this case and find that the collection of IP addresses is necessary for the Website to function.

5. Plaintiff Consented to the Collection of His IP Address

Plaintiff's claim also fails because he consented to the collection of his IP address. CIPA provides that there is no liability for collection of information "[i]f the consent of the user has been obtained." CIPA § 638.51(b)(5). Plaintiff's decision to visit the Website was itself consent for Reuters to collect his IP address since that collection is necessary to operate the Website. *Licea*, 2024 WL 1698147, at *4 ("[T]he court agrees with the argument regarding the basis of consent under the guise of visiting a website, where an IP address may be voluntarily disclosed."). Further, although Plaintiff alleges that he "did not provide his prior consent to [Reuters] to install or use the Tracker on Plaintiff's browser," CAC ¶ 84, the publicly available Website cited by and relied upon by Plaintiff shows otherwise. The first time a user visits the Website, a conspicuous banner

taking up approximately one-fifth of the computer screen appears, titled "Our Privacy Statement & Cookie Policy." *See* Ex. 1 (Screenshot of Website landing page with "Our Privacy Statement & Cookie Policy" banner). The banner includes a link to the "Privacy Statement" and "Cookie Policy" as well as a large button labeled "Accept All Cookies" and, directly above the button, a link to "Cookies Settings." *Id.* By clicking "Accept all Cookies" a website user consents to the use of all cookies, including "Trackers" such as those identified by Plaintiff that collect IP addresses. *See Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement.'") (citation omitted). A Website user can also choose to "Manage Consent Preferences" through the Website's Privacy Preference Center and can choose not to consent to various types of cookies. Ex. 2. Plaintiff does not allege that he attempted to prevent the use of cookies or Trackers in this manner. Plaintiff was on notice of and consented to the fact that his IP address would be collected while using the Website. Accordingly, the consent exception under CIPA bars Plaintiff's claim here.

6. <u>Plaintiff Cannot Bring a Private Right of Action under CIPA Without Injury</u>

Finally, Plaintiff's claim also fails because he has not suffered any injury as a result of any alleged violation of CIPA, as required for a private cause of action by an individual plaintiff. Under CIPA § 637.2, a private right of action is available to:

> (a) Any person ***who has been injured by a violation*** of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:
>
> (1) Five thousand dollars ($5,000)
>
> (2) Three times the amount of actual damages, if any, sustained by the plaintiff

CIPA § 637.2 (emphasis added). By CIPA's very terms, a plaintiff may only bring an action ***if he has been injured*** by a violation of CIPA. *Id.* § 637.2(a); *see also Casillas*, Case No. 23STCV30742, at 4 ("[T]o be an injured party," under Section 637.2(c) "Plaintiff must demonstrate her private information was collected[.]") (Ex. 3). As discussed at length *supra* in Section I, Plaintiff here alleges no injury at all resulting from the collection of his IP address when he visited the Website. He therefore cannot bring a private action against Reuters.

## CONCLUSION

This case is not complicated. Plaintiff alleges only that Reuters collected his IP address in the course of operating the very website that Plaintiff sought to access. This does not constitute a concrete harm to Plaintiff. Nor does it constitute any invasion of privacy, let alone one sufficient to criminalize the basic operation of the internet and disrupt long-established protocols for internet commerce. This Court should decline to find that Plaintiff has established Article III standing for his claim, and likewise should find that his lack of concrete injury precludes him from bringing a private right of action under CIPA. Moreover, Plaintiff's allegations make clear that the collection of his IP address in order to operate the Website—with his consent—does not constitute a violation of the pen register provisions of CIPA. For all of these reasons, Plaintiff's claim should be dismissed with prejudice.

Dated: May 24, 2024

Respectfully submitted,

**HOGAN LOVELLS US LLP**
By: */s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
jasmeet.ahuja@hoganlovells.com

*Counsel for Reuters News & Media Inc.*