**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZHIZHI XU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REUTERS NEWS & MEDIA INC.,<br><br>Defendant. | Civil Action No. 1:24-CV-02466-PAE<br><br>Hon. Paul A. Engelmayer |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: June 21, 2024

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Plaintiff Has Alleged Injury-In-Fact Sufficient To Establish Standing Under Article III ..... 2

II. Plaintiff Has Alleged A Violation Of CIPA § 638.51 ..... 7

A. CIPA § 638.51 Covers Internet-Based Communications ..... 7

B. An IP Address Is Outging "Routing, Addressing, Or Signaling Information" ..... 9

III. Defendant Is Liable For Installing a Pen Register On Plaintiff's Device, Which Caused his IP Addresses To Be Sent To Third Parties ..... 12

IV. Plaintiff Did Not Consent To the Collection Of His IP Address By A Third Party ..... 15

V. Plaintiff Has Sufficiently Alleged Injury for Statutory Standing ..... 18

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 9, 17

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 17

*Boelter v. Hearst Communications, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016).......... 3, 6

*Bohnak v. Marsh & McLennan Companies, Inc.*,
79 F.4th 276 (2d Cir. 2023) .......... 2

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 15, 18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 15, 18

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009).......... 14

*Carpenter v. United States,*
585 U.S. 296 (2018).......... 7, 10, 14

*Ciccone v. Cavalry Portfolio Services, LLC*,
2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021).......... 5

*Columbia Pictures Industries v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2017) .......... 12, 13

*Cooper v. Bonobos, Inc.*,
2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) .......... 5

*Davis v. Pacific Telephone & Telegraph,*
127 Cal. 312 (Cal. 1899).......... 10

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 8, 11, 12

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).......... 8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 13

*In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) ... 9

*In re Application of the U.S. of Am. for an Order Authorizing the Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ... 9

*In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ... 2, 3, 4, 12

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) ... 7

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) ... 2, 3, 4

*In re Google Inc.*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ... 8, 9, 10

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 12

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) ... 15, 18

*James v. Walt Disney Co.*, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ... 1, 3, 5

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) ... 7, 12, 16

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) ... 1, 4

*Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ... 18

*Keurig Green Mountain, Inc.*, 2023 WL 3707181 (N.D. Cal. May 24, 2023) ... 18

*Liau v. Weee! Inc.*, 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) ... 5

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) ... 4

*Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024) ... 10, 15

*Licea v. Old Navy, LLC*,
2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) .......... 18

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 9

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 15, 18

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 14

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 8

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) .......... 19

*Murray v. National Association of Realtors*,
2023 WL 7726173 (E.D. Mich. Nov. 15, 2023) .......... 5

*People v. Shapiro*,
50 N.Y.2d 747 (1980) .......... 4

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024) .......... 16, 17

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 8

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 4, 13

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 17

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 12

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 3

*U.S. v. Soybel*,
13 F.4th 584 (7th Cir. 2021) .......... 10, 11, 14

*U.S. v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017) .......... 10, 14

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ........ 10

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 6

*United States v. Jones*,
565 U.S. 400 (2012) ........ 7

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 4

**STATUTES**

Cal. Penal Code § 638.50 ........ 10, 11, 12

Cal. Penal Code § 638.51 ........ 1

**RULES**

Fed. R. Civ. P. 15(a) ........ 19

Plaintiff Zhizhi Xu ("Plaintiff") respectfully submits this Opposition to Defendant Reuters News & Media Inc.'s ("Reuters" or "Defendant') Motion to Dismiss (ECF No. 10) ("Motion" or "MTD").

**INTRODUCTION**

Plaintiff alleges that Defendant installs pen registers onto users' internet browsers, which collect the IP addresses of visitors to Defendant's Website and shares that information with third parties without consent. Complaint (ECF No. 1) ("Compl.") ¶¶ 59-63. Through these acts, Defendant is violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a).

Defendant does not dispute that it collected users' IP addresses and shared that data with third parties. Instead, Defendant asserts that Plaintiff lacks standing because the disclosure of IP addresses does not implicate traditional privacy interest, and the data is merely basic contact information. MTD at 7. However, the Supreme Court and multiple circuits have held that "the right to privacy encompasses the individual's control of information concerning his or his person," *James v. Walt Disney Co.*, --- F. Supp. 3d ---, 2023 WL 7392285, at *5 (N.D. Cal. Nov. 8, 2023). When statutes that "codif[y] such substantive privacy rights" are violated, such a violation "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023).

Next, Defendant argues that Plaintiff does not sufficiently allege a violation of CIPA § 638.51. MTD at 11. Relying on an incorrectly reasoned string of cases, Defendant misconstrues the plain text of CIPA or attempts to graft language onto the statute that is not present, ignoring the fact that "the California legislature intended for CIPA to establish broad privacy protections [which] supports an expansive reading to the statute." *In re Google Inc.*,

2013, WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). For the reasons set forth below, the Court should deny Defendant's Motion in full.

## ARGUMENT

### I. PLAINTIFF ALLEGES INJURY-IN-FACT SUFFICIENT TO ESTABLISH STANDING UNDER ARTICLE III

Defendant argues "Plaintiff lacks standing because the disclosure of IP addresses does not implicate traditional privacy interests, nor does the disclosure of basic contact information, such as a person's city, state, and zip code, which Plaintiff alleges can be extrapolated from an IP address." MTD at 7. But as the Third Circuit has aptly noted, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion [Defendant] makes—that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data—is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("*In re: Google*"); *see also Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285 (2d Cir. 2023) ("Like the Supreme Court in *TransUnion*, we have no trouble concluding that Bohnak's alleged harm is sufficiently concrete to support his claims for damages … the core injury here—exposure of Bohnak's private PII to unauthorized third parties—bears some relationship to a well-established common-law analog.").

*First*, Defendant misstates the law in arguing that "[t]o allege an invasion of privacy, a plaintiff must allege facts to show that the collection of the information at issue "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." MTD at 8 (cleaned up). That is wrong. As a California district court explained in rejecting this argument:

> [T]he Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing. Disney assumes that the closest analogue is a claim for intrusion upon seclusion. However, the Ninth Circuit's decision in *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589

> (9th Cir. 2020), establishes that there are other kinds of privacy rights fairly at issue here. In *Facebook*, the plaintiffs filed suit based on Facebook's practice of using plug-ins to track users' browsing histories when they visited third-party websites. *See id.* at 596. The Ninth Circuit held that the plaintiffs had standing to assert, e.g., their privacy-based claims (both statutory and common law) because the "right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *Id.* at 598. That is the privacy right being claimed by Plaintiffs here.

*Disney*, --- F. Supp. 3d ---, 2023 WL 7392285, at *5. The *Disney* decision was correct. The factors set forth by Defendant are not the only way to show standing. As the Supreme Court explained, "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or his person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64 (1989); *see also In re Facebook Inc. Internet Tracking Litig.,* 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*") ("A right to privacy encompasses the individual's control of information concerning his or his person.") (cleaned up); *see also In re: Google*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

Plaintiff's allegations here—that Defendant's installation of a pen register on Plaintiff's browser caused his IP address to be improperly collected by a third party and used for marketing purposes without his consent—fall within these parameters. *See Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427, 438 (S.D.N.Y. 2016) (finding Article III standing where "[p]laintiffs allege that Defendant disclosed protected information about Plaintiffs in two ways: by selling it to third parties, and by providing it to 'data mining' companies who then supplemented it with additional data to enhance the value of the information for Defendant").

Furthermore, "the relevant law is settled" that when a wiretapping statute like CIPA that "codifies such substantive privacy rights" is violated, such a violation "gives rise to a concrete

injury sufficient to confer standing." *Ford Motor Co.*, 85 F.4th at 574; *see also, e.g.*, *People v. Shapiro*, 50 N.Y.2d 747, 763 (1980) ("The provisions of title 3 do more than codify bare constitutional requisites; they manifest a Congressional design to protect the privacy of wire and oral communications…"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969-70 (N.D. Cal. 2023) ("Statutes such as [the California and Pennsylvania wiretapping laws] thus codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) (same as to California wiretapping law). Because CIPA codifies the aforementioned privacy harm—the right to control one's personal information—a violation of CIPA is sufficient to allege an injury-in-fact. *See In re Facebook*, 956 F.3d at 599 ("[T]he legislative history and statutory text demonstrate that … the California legislature intended to protect … historical privacy rights when [it] passed CIPA."); *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (noting CIPA was enacted to protect "the right to control the nature and extent of the firsthand dissemination of [] statements").

*Second*, Defendant is wrong that "users have no reasonable expectation of privacy in [] IP address information." MTD at 8. Courts have found the disclosure of web browsing information is sufficient to confer Article III standing. *See*, *e.g.*, *In re Facebook*, 956 F.3d at 596 (concrete injury alleged where Facebook collected "the website's Uniform Resource Locator ("URL") that was accessed by the user" and "the third-party website's Internet Protocol ("IP") address, which reveals only the owner of the website"); *In re: Google*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when … any [] third party, tracks a person's internet browser activity without authorization."). And while Defendant contends some of the information here is "publicly available" (MTD at 9), "a person may retain a

privacy interest in information that is public in some other form because both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or his person." *Murray v. National Association of Realtors*, 2023 WL 7726173, at *5 (E.D. Mich. Nov. 15, 2023) (cleaned up).

In this regard, Defendant's authorities are inapposite because they involve data breaches or violations of other laws, rather than violations of state wiretapping statutes. *Cooper v. Bonobos, Inc*., 2022 WL 170622, at *1 (S.D.N.Y. Jan. 19, 2022) (data breach that exposed information from six years earlier*)*; *Liau v. Weee! Inc.*, 2024 WL 729259, at *4 (S.D.N.Y. Feb. 22, 2024) (data breach exposing names and addresses); *Ciccone v. Cavalry Portfolio Services, LLC*, 2021 WL 5591725, at *1 (E.D.N.Y. Nov. 29, 2021) (violation of the FDCPA); *see also Disney*, 2023 WL 7392285, at *6 (distinguishing I.C. because that case "was a data breach case" and "[t]hat context clearly informed the district court's assessment"). Because the plaintiffs in these cases were bringing different claims, they alleged different injuries from the loss of the right to control their personal information that Plaintiff alleges here. *See Cooper*, 2022 WL 170622, at *3-4 (plaintiff alleged injury "based on an increased risk of identity theft or fraud," but outdated contact information was not "susceptible to misuse"); *Liau*, 2024 WL 729259, at *4-7 (plaintiff alleged injury from time spent monitoring credit and from receiving spam calls and texts); *Ciccone*, 2021 WL 5591725, at *3 (plaintiffs alleged invasions of privacy bearing a close relationship to harms caused by the common law private torts of disclosure of private facts). 'Here, unlike the data breach context, CIPA was codified by California's legislature. Moreover, the IP address in this context was used to track Plaintiff's internet browsing. That is far different than an IP address merely leaked in a data breach.

The Complaint's allegations also go far beyond the mere collection of IP addresses. Plaintiff alleges that when a user accesses Defendant's website, Defendant's server causes the Trackers to be installed on the user's browser. The Trackers in turn send "[i]dentifying information – including the user's IP address to Sharethrough, DoubleVerify, and TripleLift [the software-as-service companies that provide the Trackers to Defendant for a fee]." Compl. ¶¶ 22, 31, 40, 47.

The Complaint further alleges:

> The IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods (*e.g.*, 192.168.123.132). The first two sets of numbers indicate what network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132).
>
> Thus, the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server—*and* the IP address contains geographical location. Through an IP address, the specific device's state, city, and zip code can be determined.

Compl. ¶¶ 23, 24. The collection of an IP address thus enables advertisers to target customers by locations as granular as a zip code, and to target specific households, business, and individuals with relevant advertising. *Id.* ¶ 26. And Defendant causes this collection to occur through the installation of the pen registers to "monetize its Website and maximize revenue." *Id.* ¶ 70; *see also Boelter*, 192 F. Supp. 3d at 438 (S.D.N.Y. 2016) (finding Article III standing where "[p]laintiffs allege that Defendant disclosed protected information about Plaintiffs in two ways: by selling it to third parties, and by providing it to 'data mining' companies who then supplemented it with additional data to enhance the value of the information for Defendant"). All of this is done without the user's consent. Compl. ¶ 88.

These allegations distinguish this action from cases finding users have no expectation of privacy for their IP addresses. For instance, in *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), the court noted "e-mail and Internet users have no expectation of privacy in … the IP

addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information" and "are voluntarily turned over in order to direct the third party's servers." (emphasis added). On top of the fact that the IP address is Plaintiff's own—not that of the Website—the information here (i) was collected by a third party, not just the Website, without consent; and (ii) the information is being appropriated by third parties to ascertain a user's identity, drive revenue for the Website, and target advertising at the user based on their location, not merely to direct internet traffic.[1] Thus, at least for the purposes for which an IP address is being used in this action, an IP address falls under the purview of traditional privacy interests.

## II. PLAINTIFF HAS ALLEGED A VIOLATION OF CIPA § 638.51

### A. CIPA § 638.51 Covers Internet-Based Communications

Defendant argues that CIPA § 638.51(a) "only [applies] to 'phone technology,' *not* the internet." MTD at 12 (emphasis in original). This is wrong. The Ninth Circuit has explained that "[t]hough written in terms of wiretapping, [CIPA] applies to Internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022); *see also*, *e.g.*, *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 936 (N.D. Cal. 2015) (noting that courts have "squarely rejected" the argument that CIPA "should be narrowly construed and should not

---

[1] Further, as Justice Sotomayor observed in her concurring opinion in *United States v. Jones*, 565 U.S. 400, 417-18 (2012), "it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks … I for one doubt that people would accept without complaint the warrantless disclosure to the government of a list of every Web site they had visited in the last week, or month, or year." (cleaned up). Indeed, in *Carpenter v. United States,* 585 U.S. 296, 309-10 (2018), the Supreme Court moved significantly in this direction, holding that an individual's movements as revealed by cell phone location tracking, although voluntarily revealed, was a search under the Fourth Amendment and requires a warrant.

be applied to electronic communications"). This comports with the broad language of CIPA § 638.50(b), which defines "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire *or electronic communication* is transmitted." (emphasis added). It also comports with the fact that "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). And it comports with the fact that "the California legislature intended for CIPA to establish broad privacy protections [which] supports an expansive reading of the statute." *Id.*; *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) ("In enacting [CIPA], the Legislature declared in broad terms its intent to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.") (cleaned up).

Defendant argues that *Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) supports its argument because it involved a mobile device rather than a computer. MTD at 13. But that makes no sense. The case involved a mobile application using internet connectivity on the mobile device. *Id.* 1037. It had nothing to do with "phone technology." Moreover, other cases have regularly applied CIPA to computer-based internet wiretapping. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Revitch began each communication by pressing a button on his mouse or a key on his keyboard, causing one signal to travel to his computer and then through his browser to Moosejaw's server."); *Matera v. Google Inc.*, 2016 WL 8200619, at *3, 21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to email, "not just to communications passing over telephone and telegraph wires, lines, or cables"); *In re Google Inc.*, 2013 WL 5423918, at *21 ("In line with the plain language of the statute, the California Supreme

Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies, the Court finds that section 631 of CIPA applies to emails").

In contrast to the expansive text, California Supreme Court caselaw, and broad legislative protections supporting Plaintiff's argument, Defendant cites several cases for the proposition that "internet-based communications are not covered by CIPA's telephone-related provisions." MTD at 12. But the cases Defendant cites predominately involve other sections of CIPA where the plain text is "limited to communications passing over 'telegraphic or telephone' wires, lines, or cables." *In re Google Inc.*, 2013 WL 5423918, at *20 (referencing the first clause of CIPA § 631(a), and distinguishing same from other clauses that do not include this limitation); *see also Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1124 (S.D. Cal. 2023) (discussing CIPA § 632.7, which governs "Cordless or cellular radio telephones"); *Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023) (same). Furthermore, *In re Application of the U.S. of Am. for an Order Authorizing the Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995), discusses the federal pen register statute language that has since been changed to broaden the scope of pen registers to new forms of technology, such as email. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747, 761 (S.D. Tex. 2005).

### B. An IP Address Is Outgoing "Routing, Addressing, Or Signaling Information"

Defendant contends the Trackers are not pen registers because the IP address is not "outgoing information" under CIPA § 638.50. MTD at 14. Defendant's narrow reading of the statute is contrary to the California Legislature's intent.

As an initial matter, the federal equivalent of the CIPA pen register statute implicates IP addresses—regardless of whether it is the individual users' IP address or the visited website's IP address.[2] Indeed "an IP pen register is analogous in all material respects to a traditional telephone pen register." *U.S. v. Soybel*, 13 F.4th 584, 594 (7th Cir. 2021); *see also*, *U.S. v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017) ("recording of IP address ... [is] precisely analogous to the capture of telephone numbers"), *abrogated on other grounds by Carpenter v. U.S.*, 138 S. Ct. 2206 (2018).[3] Although CIPA was enacted before the Internet was created, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21. "For example, in a previous evolution in communications technology, the California Supreme Court interpreted 'telegraph' functionally, based on the type of communication it enabled." *Id.* "In *Davis v. Pacific Telephone & Telegraph* [127 Cal. 312, 316 (Cal. 1899)], the Supreme Court held that '*telegraph* lines' … included *telephone* lines because 'the idea conveyed by each term is the sending of intelligence to a distance … thus the term 'telegraph' means any apparatus for transmitting messages by means of electric currents and signals." *Id.* (emphasis in original).

Here, the statute defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Put differently, a pen register records the

---

[2] *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.")

[3] The court in *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024), failed to consider this authority discussing pen registers. Rather, in determining that an IP address was insufficient under section 638.51 to give rise to pen register allegations, the *Hickory Farms* decision appears to rely solely on authority interpreting other sections of CIPA. None of which have anything to do with pen registers.

"outgoing" information from a person that is being surveilled. Compl. ¶¶ 15-17.[4] And an IP address at least constitutes "routing, addressing, or signaling information" because it identifies a specific device and divulges a user's location. *Id.* ¶¶ 23-27. Accordingly, the collection of IP addresses by third parties falls within the purview of CIPA § 638.50(b).

Defendant's arguments are unpersuasive. *First*, Defendant contends the collection of IP addresses does not fall within the statute because it is not "outgoing information." MTD at 14. Specifically, Defendant notes "the equivalent of recording an outgoing telephone number dialed would be recording the email address for the recipient of an outgoing email, not the sender's email address or the subject line of the email." *Id.* at 14 n.5. Even if Defendant were correct (it is not for the reasons articulated in the Complaint), this would just mean the Trackers are "trap and trace devices," which also cover "electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication." CIPA § 638.50(c). An IP address also fits within this definition.

*Second*, Defendant argues the statute cannot cover a user's IP address because the information is about the user rather than "an intended recipient of an electronic or wire communication." MTD at 14. However, the statute does not limit *who* the recorded information must regard. Cal. Penal Code § 638.50(b). Regardless, CIPA is intended to "protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Flanagan*, 27 Cal. 4th

[4] As opposed to a "trap and trace" device, that records information that is *incoming* to the individual being surveilled. Regardless, pen registers and trap and trace devices are almost always used together, and thus, courts generally discuss them as one. *See*, *e.g.*, *U.S. v. Soybel*, 13 F.4th 584, 586 n.2 (7th Cir. 2021) ("For the sake of simplicity, we use the term "pen register" to refer to both [pen registers and trap and trace devices].").

at 775 (cleaned up). As the California Supreme Court explained, "[t]his philosophy appears to lie at the heart of virtually all the decisions construing [CIPA]." *Id.* This prohibition does not extend only to literal "eavesdropping upon private communications," as Defendant suggests. MTD at 14 (quoting CIPA § 630). *See also Javier*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, [CIPA] applies to Internet communications.").

Accordingly, Defendant's interpretation—that CIPA § 638.50 cannot apply to IP addresses because it is outgoing information about a user's location—is unpersuasive. This is exactly the type of information that the California Legislature intended to protect.

*Third*, Defendant is wrong that CIPA § 638.50 categorically excludes IP addresses. MTD at 14. Instead, various sections of CIPA protect against a range of data, such as "a patient's identity in the form of cookies, *IP address*, and User-Agent identifiers," *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 785 (N.D. Cal. 2022) (emphasis added); a user's browsing history, *In re Facebook*, 956 F.3d at 606-08; and even mouse clicks and keystrokes. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517-18 (C.D. Cal. 2021).

Accordingly, IP addresses fall within the definition of the pen register statute.

## III. DEFENDANT IS LIABLE FOR INSTALLING A PEN REGISTER ON PLAINTIFF'S DEVICE, WHICH CAUSED HIS IP ADDRESSES TO BE SENT TO THIRD PARTIES

Defendant asserts that "because the collection of IP addresses is necessary to operate the Website, there can be no violation of CIPA." MTD at 15. To that end, Defendant cites cases under the analogous federal statute finding that collection of IP addresses did not violate the statute where IP addresses were "already and necessarily capture[d]" by websites. MTD at 17 (quoting *Columbia Pictures Industries v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2017)).

Defendant misunderstands or misconstrues Plaintiff's allegations. Plaintiff's claim is *not* that his IP address was disclosed to Defendant. Instead, Plaintiff's claim is Defendant installed "pen registers" (the Trackers) on his browser, which caused Plaintiff's IP address to be sent to third parties. Compl. ¶¶ 20-22, 30, 37, 46, 51, 63, 70, 75, 80, 82, 103, 105. Whether sharing Plaintiff's IP address is required to operate the Website, there is nothing "necessary" about disclosing Plaintiff's IP address to third parties who use the information for marketing, advertising, and data analytics. This accords with the purpose of CIPA, as the California Supreme Court has held:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.

*Ribas*, 38 Cal. 3d at 360-61. Thus, the claim here is that third parties simultaneously and improperly acquired Plaintiff's IP address through Defendant's installation of a pen register, *not* that Defendant itself acquired Plaintiff's IP address.

Defendant's cited authorities are all distinguishable on this basis. For instance, in *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) the allegations were that "Facebook collected plaintiffs' IP addresses … only when they were using the Facebook app or were visiting Facebook's website." Thus, unlike here, Facebook was not a third party receiving the IP addresses. Similarly, in *Columbia Pictures Industries v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2017), the defendant's website itself was the recipient of the IP address, not a third party. Further, the collection of users' IP addresses *by the website* was necessary for the operation and maintenance of the website. *Id.* Here, on the other hand, it is not necessary for a website to function for third party advertising and marketing services to collect users' IP addresses

to "analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and advertisers' revenue." Compl. ¶ 83.

In *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009), in addition to the user consenting to the disclosure of the IP address, the court held "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information *sent to them*." (emphasis added). But again, Plaintiff's claim is not that the IP address was sent to Defendant, the only entity with whom Plaintiff was directly communicating. *See also id.* ("MediaSentry, as a party to th[e] communication, simply recorded the information transmitted to it from Thomas–Rasset's computer."). Last, in *Malibu Media, LLC v. Pontello*, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013), the IP address was also sent to the other party to the communication, not a third party. *Id.*, at *4 ("By participating in the BitTorrent swarm Pontello consensually engaged in the transaction with IPP, and communicated his IP address as part of the packet his computer sent to IPP.").

As noted above, the Second and Seventh Circuits have already made clear that IP addresses can absolutely be considered violative information giving rise to pen register allegations. *See Soybel*, 13 F.4th at 594; *Ulbricht*, 858 F.3d at 97, *abrogated on other grounds by Carpenter*, 138 S. Ct. 2206.

In sum, Plaintiff's claim is that his IP address was collected by *third parties* through Defendant's use and installation of the Trackers, *not* that Defendant itself collected Plaintiff's IP address. There can be no argument that Plaintiff's IP address was voluntarily provided to these third parties, nor that the third parties' collection of his IP address for marketing, advertising, or data analytics was necessary to make Defendant's Website function.

## IV. PLAINTIFF DID NOT CONSENT TO THE COLLECTION OF HIS IP ADDRESS BY A THIRD PARTY

Defendant contends "Plaintiff's decision to visit the Website was itself consent for Reuters to collect his IP address since that collection is necessary to operate the Website." MTD at 18. As noted above, this misconstrues Plaintiff's allegations. Argument § III, *supra*. The question here is whether Plaintiff consented to Defendant installing trackers facilitating the collection of his IP address by third parties. Those trackers are most certainly not necessary operate or maintain Defendant's website.[5]

Next, Defendant contends Plaintiff consented to Defendant's installation and use of the Trackers based on a cookie banner available on the website. MTD at 19 (citing Ahuja Decl. Ex. 1). Defendant has not met its burden to show Plaintiff's notice of and consent to Defendant's practices. *See*, *e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023) ("The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (same); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) ("The party seeking to establish consent has the burden of proof."); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023) ("It was Amazon's burden to show assent, not Jackson's to show lack thereof.").

As an initial matter, Defendant has not shown the banner appears on its homepage or any other page other than the "Thomson Reuters Privacy Statement" page. *See* Ahuja Decl. Nor has Defendant shown the banner appeared when Plaintiff first visited the Website. *Compare* Compl. ¶ 81 ("Plaintiff has visited the Website multiple times—including as long ago as July 2020 and as

[5] In this regard, the *Hickory Farms* decision is inapposite in that there was no mention of Trackers on the website, but rather, the plaintiff sought to assert a claim solely on a collection of his IP address by the website itself. *See* 2024 WL 1698147, at *1. That is different from this case, which asserts a violation of CIPA based on Defendant's installation of the Trackers on its Website, which shares Plaintiff's IP address with third parties.

recently as March 2024"); *with* Ahuja Decl. Ex. 1 (showing webpage as it appeared "on January 9, 2024"). This is important because CIPA requires prior consent, meaning Defendant must have gotten Plaintiff's consent to install the Trackers the first time she visited the Website; after-the-fact consent to the practice is insufficient. *See Javier*, 2022 WL 1744107, at *2 ("[W]e conclude the California Supreme Court would interpret [another section of CIPA] to require the prior consent of all parties to a communication.")

Further, the cookie banner is not sufficient to provide Plaintiff with notice of Defendant's installation of the Trackers, or Plaintiff's assent to the same. In *Price v. Carnival Corp.*, --- F. Supp. 3d ---. 2024 WL 221437, at *4 (S.D. Cal. Jan. 19, 2024), the defendant argued the plaintiff consented to a violation of CIPA where a "Cookie Policy banner informs users that Carnival uses cookies to personalize content and ads, to provide social media features and to analyze Carnival's traffic" and "[t]he banner includes a hyperlink, that users may click to view Carnival's privacy policy." (Cleaned up). The court found the cookie banner was an unenforceable browsewrap agreement and therefore did not suffice for consent:

> Here, the Cookie Policy banner, is visible to a user without scrolling. However, the text of the banner is smaller than the rest of the bold, large typeface found on Carnival's homepage, the notice is placed far below the relevant buttons that a user may click, the blue of the banner matches the blue of other web panels, and the white text of the banner blends in with the website's white background. Additionally, Carnival has not demonstrated that the banner appears immediately or that the banner persists for the entirety of a user's visits. Taken together, these facts do not demonstrate that a "reasonably prudent user would be on inquiry notice of the terms of Carnival's Privacy Policy.
>
> A user may be distracted by the large red buttons inviting them to "SHOP NOW" or "SEARCH CRUISES" and never view the slim banner across the bottom of their screen. A user may click one of these large, red buttons before the Cookie Policy banner appears, and the banner may fail to appear on subsequent pages. Whether because of the notice's small text, inconspicuous color scheme, or potential failure to appear, a reasonably prudent user would not necessarily have known or learned of the existence of Carnival's privacy agreement prior to acting.

*Id.*, at *5 (cleaned up).

So too here. The banner is in smaller text "than the rest of the bold, large typeface found on [Reuter's] homepage" or most other pages on the Website. *Id.*[6] Reuters' homepage is littered with news stories, options to play videos, and even advertisements that district a user. And, Defendant has not demonstrated "the banner appears immediately or that the banner persists for the entirety of a user's visits." *Id.* Further, Defendant has not shown that Plaintiff was required to click on the banner to navigate the Website (or that he, in fact, did click on the banner). A loitering button without an action taken to accept the terms is not sufficient for consent. *See Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (declining to enforce arbitration agreement where "Hernandez and Russell did not take any action that unambiguously manifested their assent to be bound by the terms and conditions"). For each of these reasons, Defendant has not met its burden to show Plaintiff consented to the conduct.

At the very least, there is a factual dispute as to whether Plaintiff actually clicked or was required to click the "Accept All Cookies" button. *See*, *e.g.*, *Roe v. Amgen Inc.*, 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024) ("Defendant avers Plaintiffs' claims fail because Plaintiffs do not aver to have hit 'decline' when presented with the question of whether they accepted Defendant's 'cookie banner' … The Court declines to grant Defendant's motion as to Counts I and II on the basis that the merits of Plaintiffs' claims are premised on a factual dispute that demands further discovery."); *Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) ("Defendant's consent defense turns on the outcome of multiple factual disputes … These factual disputes are not suitable for resolution at this stage in the proceedings.").

---

[6] REUTERS, https://www.reuters.com/; *see also* Compl. ¶¶ 46, 51 (Figures 4 and 5 showing how the Website appears).

Finally, Defendant contends "Plaintiff does not allege that he attempt to prevent the use of cookies or Trackers" by opting out. MTD at 19. This assumes Plaintiff had knowledge of his ability to do so, which is a factual question. Regardless, it is *Defendant's burden* to establish Plaintiff consented, not Plaintiff's burden to establish he did not. *Brown*, 685 F. Supp. 3d at 926 n.13; *Calhoun*, 526 F. Supp. 3d at 620; *Lopez*, 519 F. Supp. 3d at 685; *Jackson*, 65 F.4th at 1100. Saying, without more, that there was a cookie banner on the website or that Plaintiff should have alleged he opted out does not meet that burden. On the contrary, Plaintiff's allegations that "Defendant never sought consent, and Plaintiff and Class Members never provided consent" are "sufficient to … plead that he did not provide prior consent to the recording." *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024); *see also* Compl. ¶¶ 85, 88-89; *Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *3 (N.D. Cal. May 24, 2023) ("Plaintiff alleges he 'was not informed' his conversations were being 'recorded, intercepted, or eavesdropped upon,' and did not consent to monitoring by the third-party when he communicated with Defendant. That is sufficient at this stage."); *Licea v. Old Navy, LLC*, --- F. Supp. 3d ---, 2023 WL 3012527, at *4 (C.D. Cal. Apr. 19, 2023) (finding sufficient allegations that "[p]laintiff explicitly pleads that he and the purported class members did not consent to the recording of their conversations with Defendant").

## V. PLAINTIFF HAS SUFFICIENTLY ALLEGED INJURY FOR STATUTORY STANDING

Defendant argues "Plaintiff's claim also fails because he has not suffered any injury as a result of any alleged violation of CIPA, as required for a private cause of action by an individual plaintiff." MTD at 19. While the two concepts are not always simultaneous, here, Plaintiff has statutory standing for the same reasons as he has suffered an injury-in-fact for Article III standing. Argument § I, *supra*.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires.'").

Dated: June 21, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Yitzchak Kopel
Yitzchak Kopel

Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*