**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZHIZHI XU, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REUTERS NEWS & MEDIA INC.,<br><br>Defendant. | Case No. 1:24-CV-02466-PAE<br><br>Hon. Paul A. Engelmayer |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....... 1

ARGUMENT ....... 2

I. Plaintiff Cannot Demonstrate Standing, and Plaintiff's Citation to Inapposite Cases About Collection of Data Far Beyond IP Addresses Is Irrelevant ....... 2

II. Plaintiff Fails to Show a Violation of CIPA's Pen Register Provision....... 5

A. Internet-Based Communications Are Not Covered by CIPA's Pen Register Provision ....... 5

B. IP Address Information Is Not Outgoing Routing, Addressing, or Signaling Information ....... 6

C. Whether Plaintiff's IP Address Was Later Transmitted to a Third Party Is Irrelevant to Plaintiff's CIPA Claim ....... 9

D. Plaintiff's Reliance on Out-of-Circuit Consent Cases Does Not Support His Pen Register Claim ....... 10

E. Plaintiff Fails to Sufficiently Allege Statutory Standing Under CIPA ....... 10

CONCLUSION ....... 10

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ........ 3

*Bohnak v. Marsh McLennan Cos., Inc.*,
79 F.4th 276 (2d Cir. 2023) ........ 2

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 8

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ........ 8

*Columbia Pictures Industries v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) ........ 9

*Cooper v. Bonobos, Inc.*,
2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ........ 3

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ........ 4

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 5, 8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 4

*In re Application of the United States of America for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ........ 6

*In re Facebook Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........ 1, 3

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ........ 5

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 5

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 2

*James v. Walt Disney Co.*,
--- F. Supp. 3d ---, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 2

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 5

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 10

*Liau v. Weee! Inc.*,
2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) .......... 1

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 3

*Licea v. Hickory Farms LLC*,
2023 WL 11113637 (Cal. Super. Dec. 4, 2023) .......... 7

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 1, 5, 7, 8

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 7, 8, 9, 10

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 5

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 4

*Murray v. Nat'l Ass'n of Realtors*,
2023 WL 7726173 (E.D. Mich. Nov. 15, 2023) .......... 3

*People v. Shapiro*,
50 N.Y.2d 747 (1980) .......... 3

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 5

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 3

*Strike 3 Holdings, LLC v. Doe*,
2017 WL 5001474 (D. Conn. Nov. 1, 2017) ........ 3

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) ........ 3

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) ........ 4

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019) ........ 4, 5

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........ 7

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017) ........ 7

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 3

**Statutes**

Cal. Penal Code § 630 ........ 10

Cal. Penal Code § 637.2 ........ 10

Cal. Penal Code § 637.2(a) ........ 10

Cal. Penal Code § 638.51 ........ 5, 6

Cal. Penal Code § 638.52(d)(1) ........ 6

**Other Authority**

Assemb. B. 929, Reg. Sess. (Cal. 2015), https://legiscan.com/CA/text/AB929/id/1258696 ........ 6

# INTRODUCTION

Nothing in Plaintiff's Opposition (ECF No. 16) rebuts the fact that his IP address is neither private nor a personally identifiable piece of information. This truth fatally undermines both Plaintiff's Article III standing and his ability to state a claim under the pen register provision of the California Invasion of Privacy Act ("CIPA").

Not one case Plaintiff advances to buttress his claim of Article III standing involves IP addresses, which is all that is at issue here. Although Plaintiff cites two cases in support of a general right to privacy for "web browsing information," neither case involves IP addresses and one, *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589, 604 (9th Cir. 2020), explicitly rejects the notion that IP addresses are private at all. Simply put, Plaintiff offers no authority for the proposition that the mere collection of one's IP address is sufficiently analogous to a common law privacy tort to support standing, and numerous courts, including this one, reject such an opinion. *See, e.g.*, *Liau v. Weee! Inc.*, 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024).

But even setting aside his lack of standing, Plaintiff is also unable to resuscitate his pen register claim on the merits. Relying on cases about different CIPA provisions than the one at issue and on the federal pen register statute—which, unlike CIPA, has been amended to explicitly include internet-based communications—Plaintiff asks the Court to do what California's legislature and other courts have not: find that the collection of IP addresses during internet-based communications violates CIPA's pen register provision. *First*, Plaintiff entirely ignores the fact that the only court to consider whether CIPA's pen register provision covers trackers like those here found ***it did not***. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *3 (Cal. Super. Mar. 13, 2024). *Second*, Plaintiff explicitly disclaims relying on the collection of IP addresses for use as routing information, instead focusing on the collection of IP addresses by a tracker where

the IP address is the ***content*** of the communication, which is covered by neither the pen register nor any other provision of CIPA. *Third*, Plaintiff fails to explain how, because the collection of IP addresses is necessary to operate its website, sharing the same information with a third-party somehow places Reuters in the ambit of CIPA's pen register provisions. *Fourth*, Plaintiff's exclusive reliance on Ninth Circuit case law to demonstrate consent fails to state the standard in *this* Circuit for evaluating consent from privacy policies. And, *finally*, Plaintiff's mere assertion that he has suffered injury does not demonstrate he has statutory standing.

This Court should reject Plaintiff's request to criminalize the internet and dismiss this nuisance Class Action Complaint ("CAC") with prejudice because IP addresses are public pieces of information that anyone who uses the internet must disclose as matter of operation.

## ARGUMENT

### I. Plaintiff Cannot Demonstrate Standing, and Plaintiff's Citation to Inapposite Cases About Collection of Data Far Beyond IP Addresses Is Irrelevant

Plaintiff lacks standing, and his citation to inapposite cases involving the collection of far more information than an IP address cannot cure this defect. IP addresses are substantively different from the data elements in the cases Plaintiff relies on because IP addresses are neither associated with personal information nor are they private.

Not one case Plaintiff points to in support of his claim that he has standing involves only an IP address. *See* Opp'n at 2. In ***every single case*** he cites, the disclosure of some other type of information is what formed the basis of the court's conclusion that the plaintiff had alleged an injury sufficiently analogous to a privacy tort to support standing. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 320 (3d Cir. 2019) (cookie permitted tracking of every URL visited even when user configured browser to not share data); *Bohnak v. Marsh McLennan Cos., Inc.*, 79 F.4th 276, 281 (2d Cir. 2023) (name and Social Security Number); *James*

*v. Walt Disney Co.*, --- F. Supp. 3d ---, 2023 WL 7392285, at *1 (N.D. Cal. Nov. 8, 2023) (page properties, pages viewed, purchase intent, add-to-cart actions, keystrokes, search terms entered, and mouse click events); *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 752 (1989) (FBI criminal record); *In re Facebook*, 956 F.3d at 604 (every URL visited); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) (demographic information); *Jones v. Ford Motor Co.*, 85 F.4th 570, 572 (9th Cir. 2023) (call logs and text messages); *People v. Shapiro*, 50 N.Y.2d 747, 763 (1980) (content of telephone conversations); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 967-68 (N.D. Cal. 2023) (transcripts of chats with clients' customers); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1101 (C.D. Cal. 2023) (same); *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985) (listening in on phone conversation); *Murray v. Nat'l Ass'n of Realtors*, 2023 WL 7726173, at *1 (E.D. Mich. Nov. 15, 2023) (magazine reading and demographic information). As if Plaintiff could have dug his hole any deeper, the very case he quotes for the proposition that "disclosure of web browsing information is sufficient to confer Article III standing" (Opp'n at 4), *In re Facebook*, 956 F.3d at 596, goes on to state the URL tracking at issue in that case is different from ***the collection of IP addresses in which users have no expectation of privacy***. The court noted that "users 'should know that [IP addresses are] provided to and used by Internet service providers for the specific purposes of directing the routing information'" and "distinguish[ed] the [collection of] IP addresses . . . from the collection of URLs." *Id.* at 604.[1]

That Plaintiff can point to ***no case*** where a court has found that disclosure of IP addresses alone is sufficient to confer standing is hardly surprising. Courts routinely find that IP addresses are neither personal nor private information. *See* Mot. at 8-11; *see also Strike 3 Holdings, LLC v.*

[1] Plaintiff's argument that IP addresses are private information is further undercut by the fact that apparently both he and his lawyers have publicly listed their IP addresses surrounded by large red boxes in the publicly filed CAC at Figures 3, 4, and 5. *See Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (no standing where "private" information was public).

*Doe*, 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016); *United States v. Jean*, 207 F. Supp. 3d 920, 932 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018). As the Eighth Circuit upheld in *Jean*, an IP address "does not belong to the user in the sense that it is not associated with the user's personal property and cannot be transported to a new location simply by moving the user's personal computer to that new location." *Jean*, 207 F. Supp. 3d at 932. The court explained that if a user took their laptop from their home to a coffeeshop, the IP address would change to the shop's IP address. Indeed, because they are not personal information and must be shared with a website to function, virtually every court to consider the issue has found no expectation of privacy in IP addresses. *See, e.g.*, *United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019).

Although Plaintiff attempts to distinguish Reuters' cases on this point by arguing that some of them do not specifically relate to CIPA, Plaintiff conveniently overlooks *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (Mot. at 8) and *Mikulsky v. Noom*, *Inc.*, 682 F. Supp. 3d 855, 864–65 (S.D. Cal. 2023) (Mot. at 10), both of which specifically address Article III standing in the context of a CIPA claim. As Reuters already explained in depth, the *Heeger* court dismissed the action for lack of standing because the mere collection of IP addresses "will not do for a privacy injury," 509 F. Supp. 3d at 1190, and the *Mikulsky* court similarly found that the disclosure of "basic contact information" such as an "email address or phone number" was insufficient to support standing, 682 F. Supp. 3d at 864. Plaintiff simply ignores this.

In a last ditch attempt to demonstrate standing, Plaintiff tries to distinguish the multitude of cases cited by Reuters finding that there is no expectation or right to privacy in IP addresses by arguing that those cases did not involve the use of a third-party cookie to collect information to monetize a website. But in this District, courts take a "categorical" approach to IP addresses,

holding that "users have no reasonable expectation of privacy in [ ] IP address information." *Kidd*, 394 F. Supp. 3d at 362. With such a "categorical" approach, it does not matter whether the IP address was collected to monetize a website or to catch a criminal; the result is the same: the IP address is not private information that causes a concrete injury if collected.

Because Plaintiff has failed to demonstrate that he has standing, and any amendment would be futile, the Court should dismiss the CAC with prejudice.

## II. Plaintiff Fails to Show a Violation of CIPA's Pen Register Provision

### A. Internet-Based Communications Are Not Covered by CIPA's Pen Register Provision

Plaintiff's repeated invocation of the "expansive" nature of CIPA cannot overcome the specific holdings of California courts that the pen register provision of CIPA, Section 638.51, does not apply to internet-based communications. In a brazen show of hypocrisy, Plaintiff relies exclusively on cases not about Section 638.51 to argue that Section 638.51 applies to internet-based communications mere paragraphs before wrongly accusing Reuters of citing cases that "predominately involve other sections of CIPA." Opp'n at 9. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (Section 631); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 936 (N.D. Cal. 2015) (Section 631); *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (Sections 631 and 632); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (not about Internet communications; Section 632); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (Sections 631, 632, and 635); *Matera v. Google Inc.*, 2016 WL 8200619, at *3, 21 (N.D. Cal. Aug. 12, 2016) (Section 631).

But in *Licea*, 2024 WL 1698147, at *3 (Mot. at 10, 12), the Superior Court of California specifically addressed the application of CIPA's pen register provision and explicitly held that it did not apply to internet communications. *Id.* ("Legislative updates and commentary continue to

explicitly cover cordless and cellular phone technology without reference to internet based communications.").[2] To Reuters' knowledge, *Licea* is the only case that addresses whether Section 638.51 applies to internet based communications, which is why Reuters relied on it in its Motion. Plaintiff's efforts to minimize it are unavailing, as is Plaintiff's attempt to distinguish *In re Application of the United States of America for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) as discussing a version of the federal pen register statute "that has since been changed" (Opp'n at 9). As Reuters noted in its Motion (at 13, n.4), the language of the pre-amendment federal pen register statute at issue in *In re Application* is identical to the ***current*** language in CIPA's pen register provisions.

Because Plaintiff is unable to identify a single authority holding that Section 638.51 applies to internet-based communications, and the only court to consider the issue has determined that it does not, this Court should dismiss the CAC and follow *Licea*, finding that Section 638.51 does not apply to internet-based communications.

### B. IP Address Information Is Not Outgoing Routing, Addressing, or Signaling Information

Despite Plaintiff's protestations otherwise, the collection of IP information is not covered by CIPA's definition of a pen register. Although Plaintiff contends that recent cases interpreting the federal pen register statute somehow confirm that CIPA implicates IP addresses, Opp'n at 10, those cases are inapposite. As Plaintiff himself explained not even one page earlier in his

---

[2] Other sections of the pen register provision make clear that it only governs telephone-based communications. *See* CIPA § 638.52(d)(1) (an order granting authority to use a pen register or trap and trace device shall specify "[t]he identity" of the person "in whose name is listed ***the telephone line*** to which the pen register or trap and trace device is to be attached," along with "[t]he number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be attached." (Emphasis added). Further, California's legislature has clarified "that any location information obtained by a pen register or a track and trace device is limited to the information that can be determined from the telephone number." Assemb. B. 929, Reg. Sess. (Cal. 2015), https://legiscan.com/CA/text/AB929/id/1258696.

Opposition, the federal pen register statute was amended, *see* Opp'n at 9, and CIPA is identical to the ***pre***-amendment federal pen register statute. Courts have noted that one of the amendments to the federal pen register act "expanded the definition of a 'pen register device' to include devices such as IP addresses." *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *3 (E.D. Mich. Nov. 19, 2013). But California's legislature has not made such an amendment to CIPA. *See Licea*, 2024 WL 1698147, at *4 (noting plaintiff did not dispute CIPA's definition but instead "introduces new argument[s] based on the federal Patriot Act").[3]

The two criminal cases Plaintiff cites are far afield from the facts here, involving the installation of actual pen registers on computer modems and routers that recorded ***all ingoing and outgoing Internet traffic***, including IP addresses. *See United States v. Soybel*, 13 F.4th 584, 587–88 (7th Cir. 2021) (Opp'n at 10) (installation of pen register on building master router); *United States v. Ulbricht*, 858 F.3d 71, 95-96 (2d Cir. 2017) (Opp'n at 10) (installation of pen register on home router). In addition, both cases involved the installation of a ***physical*** device, which is not what Plaintiff alleges here. *Compare Licea*, 2024 WL 1698147, at *4 (rejecting claim that installation of cookie constituted "device" under CIPA).

Stripped of this argument, Plaintiff pleads with the Court to expand by judicial fiat what the California legislature has refused to do. Opp'n at 10. Because an IP address cannot even be used to identify a specific user, it does not constitute "a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." Opp'n at 11 (quoting

[3] Plaintiff argues *Licea* is distinguishable because it allegedly involved only collection of IP addresses by the website at issue itself, not the use of a third-party's trackers. Opp'n at 15 n.5. However, the operative complaint under consideration explicitly stated that liability was premised on the installation of "trackers" on the website. First Am. Compl., *Licea v. Hickory Farms LLC*, 2023 WL 11113637 (Cal. Super. Dec. 4, 2023).

*Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)); *compare Licea*, 2024 WL 1698147, at *3 (rejecting request to expand CIPA to cover IP addresses).

While Plaintiff claims that IP addresses should be covered as "outgoing routing, addressing, or signaling information," that is nothing more than creative pleading. Throughout his Opposition, Plaintiff repeatedly states that he is not challenging the collection of IP addresses by Reuters itself for purposes of operating its website. *See, e.g.*, Opp'n at 6 ("The Complaint's allegations [ ] go far beyond the mere collection of IP addresses [by Reuters]."); 13 ("Plaintiff's claim is not that his IP address was disclosed to Defendant."); 13 (distinguishing cases as not involving IP addresses being sent to third parties). That admission is fatal. The cases Reuters cites confirm that when IP addresses are being collected through cookies and not merely being used to visit a website, they are more akin to the ***content*** of the communication, thus falling outside the definition of a pen register. *See, e.g.*, *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("The IP address recorded by MediaSentry was part of the content of the communication."); *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) ("[T]he IP address received by [third-party] was part of the content of the communication, so the Pen Register Act has no application."). And, as stated above, courts have repeatedly rejected the idea that IP addresses are protected content under CIPA or the federal wiretap statutes. *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (holding CIPA's wiretap provisions do not cover collection of "geographic location information").

Plaintiff cannot have his cake and eat it too: he wants the cookie to be treated as simply a device installed by Reuters to collect his IP address for purposes of arguing the cookie is a pen register while at the same time explicitly disclaiming that Reuters is the one collecting his information, thus proving that the IP address is actually more akin to content sent to a third party.

Either way, however, his argument fails because his IP address is not "outgoing" information or, if it is, the cookie is not a "device" under CIPA. *See* Section II.B, *supra*.

### C. Whether Plaintiff's IP Address Was Later Transmitted to a Third Party Is Irrelevant to Plaintiff's CIPA Claim

Plaintiff's argument that he is not bringing claims against Reuters for collecting his IP address, but instead for allowing a third-party to install software on Reuters' website that collected his IP address (*see* Opp'n at 12–14), is a distinction without a difference.

While Plaintiff claims that the cases Reuters cites do not involve "simultaneous[]" acquisition of Plaintiff's information, Opp'n at 13, Plaintiff does not plead simultaneous acquisition of his information. Rather, Plaintiff pleads multiple steps occur prior to his IP address being sent to third-parties: (1) his browser sends a request to Reuters' server; (2) Reuters' server sends a response that includes directions to install a cookie on his browser; and (3) the cookie instructs his browser to send his IP address to the relevant cookie owner. *See, e.g.*, CAC ¶¶ 34, 43, 49. This first step involves the transmission of an IP address to Reuters. *See* Mot. at 15–16.

The facts here are thus very similar to other cases finding no violation of the analogous federal pen register act due to the collection of IP addresses being necessary to operate the website. For instance, in *Columbia Pictures Industries v. Bunnell*, 2007 WL 2080419, at * 11 (C.D. Cal. May 29, 2007), the defendant argued it should not have to turn over in discovery a server log containing IP addresses of visitors to its website because it would violate the federal pen register statute. The court rejected this argument, pointing out that the IP addresses were "necessarily" captured when users visited the defendant's website. *Id.* Similarly, in *Malibu Media*, 2013 WL 12180709, at *4, the defendant argued that the plaintiff had violated the federal pen register statute by hiring a third-party that determined the defendant was pirating the plaintiff's content. The court rejected this argument because the defendant had voluntarily transmitted his IP address and the

third-party could not be barred from then recording that information. *Id.* So too, here. Plaintiff had already voluntarily transmitted his IP address to Reuters. The fact that Reuters hired a third party that then went on to further collect and record Plaintiff's IP address has no impact.

### D. Plaintiff's Reliance on Out-of-Circuit Consent Cases Does Not Support His Pen Register Claim

Plaintiff exclusively relies on Ninth Circuit caselaw to argue that Reuters has not adequately demonstrated consent. Opp'n at 15–18. He does not distinguish any of the Second Circuit cases Reuters cited in its motion, Mot. at 19, nor does he explain how a different circuit's jurisprudence on web-based consent should inform this Court's decision. Plaintiff offers no reason for the Court to depart from this Circuit's precedents.

### E. Plaintiff Fails to Sufficiently Allege Statutory Standing Under CIPA

Plaintiff's mere say so that he has been injured because he has suffered an injury for purposes of CIPA does not make it so. A private right of action is available under CIPA § 637.2 to an individual "who has been ***injured by a violation***" of the statute. CIPA § 637.2 (emphasis added). Because Plaintiff offers no argument or suggestion that his IP address is private information or that it could personally identify Plaintiff on its own, and CIPA was enacted "to protect the right of privacy," CIPA § 630, any exposure of an IP address could not possibly injure Plaintiff. He thus lacks statutory standing to bring a claim under CIPA. *See* CIPA § 637.2(a); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) ("[A] statutory cause of action is presumed to extend only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.").

## CONCLUSION

For all of the foregoing reasons, Reuters respectfully requests that the Court dismiss Plaintiff's claim with prejudice.

Dated: July 8, 2024

Respectfully submitted,

**HOGAN LOVELLS US LLP**

By: */s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
jasmeet.ahuja@hoganlovells.com

*Counsel for Reuters News & Media Inc.*