BURSOR & FISHER P.A.

1330 AVENUE OF THE AMERICAS
32ND FLOOR
NEW YORK, NY 10019
www.bursor.com

YITZCHAK KOPEL
Tel: 646.837.7127
Fax: 212.989.9163
ykopel@bursor.com

February 13, 2025

***Via ECF***
The Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2201
New York, NY 10007

**Re:** ***Xu v. Reuters News & Media Inc.*, Case No. 1:24-cv-02466-PAE**
**Plaintiff's Response To Defendant's Notices of Supplemental Authority**

Dear Judge Engelmayer:

I represent Plaintiff Zhizhi Xu in the above matter. I write in response to Defendant's Notices of Supplemental Authority (ECF Nos. 21, 23, 25-26, 30). As an initial matter, Defendant's "substantive commentary" on these decisions amounts to supplemental briefing and is improper. *See*, *e.g.*, *Steuben Foods, Inc. v. Oystar USA, Inc.*, 520 F. Supp. 3d 310, 318 (W.D.N.Y. 2021). Accordingly, while the Court may consider any supplemental decisions, it should not consider "any commentary thereon." *Fullwood v. Wolfgang's Steakhouse, Inc.*, 2017 WL 5157466, at *3 (S.D.N.Y. Nov. 3, 2017). For the same reason, the Court should disregard Defendant's responses in these letters to Plaintiff's Notices of Supplemental Authority (ECF Nos. 18, 22, 24, 26, 29)—which Plaintiff submitted *without* argument—as improper supplemental briefing. To the extent the Court considers Defendant's arguments, however, Plaintiff provides the following context.[1]

Defendant's authorities all suffer from the same flaws and should be disregarded, and the propositions set forth in each have been analyzed and rejected by Plaintiff's cited authorities.[2] Plaintiff's cited authorities conducted an analysis of the plain text of CIPA § 638.51, which controls, and found a violation of the statute. *See*, *e.g.*, *Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577, at *3 (N.D. Cal. Oct. 21, 2024) ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there."); *Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709, at *3-4 (N.D. Cal. Dec. 12, 2024); *Moody v. C2 Educational Systems Inc.*, --- F. Supp. 3d ---, 2024 WL 3561367, at *2 (C.D. Cal. July 25, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

---

[1] Across Defendant's multiple letters, it has submitted three pages of single-spaced, supplemental briefing. Accordingly, Plaintiff has limited her response to three pages as well.

[2] Defendant has contended in its letter that the Court must give "proper regard" to the rulings of state courts. *See*, *e.g.*, ECF No. 23. The "regard" California itself gives to these decisions is none. *See* Cal. R. Ct. 8.1115(a) ("[A]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."). Thus, these decisions should be accorded no greater weight than another solely because they are from state trial courts.

By contrast, Defendant's authorities jumped straight to a single piece of legislative history and analyzed the statute based on that. *See*, *e.g*, ECF Nos. 23-1 at 3, 27-1 at 5, 30-1 at 5. This is improper. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2454 (2024) ("As this Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text.").[3]

Even as to the legislative history, Defendant's authorities ignored mandates from the California Supreme Court that "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (citing *Ribas v. Clark*, 38 Cal. 3d 355 at 360-61 (1985)). Likewise, these authorities ignored that "[t]he California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme," and that "other provisions of CIPA are not limited to the traditional versions of the tools at issue," based on "the plain language of the statute." *Shah*, 2024 WL 4539577, at *4. This is so even given the "rule of lenity," which does not apply when the text is unambiguous (as here) and whose application to another section of the CIPA has already been rejected. *Compare Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (rejecting application of rule of lenity to CIPA § 632.7); *with* ECF No. 30-1 at 5 (failing to discuss *Smith*). Thus, not only do Defendant's authorities ignore the text and mandates from the California Supreme Court, they performed a perfunctory analysis of the legislative history as well and therefore reached the wrong conclusion.[4]

Defendant's authorities are also distinguishable on the facts. Each of Defendant's cited authorities involved a "tester" plaintiff whose counsel has been roundly criticized for serial litigation and outlandish comparisons. *See*, *e.g.*, *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023) ("Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous 'cookie cutter' lawsuits under CIPA…"); *id.* at 1057 n.4 ("Plaintiff goes as far as to compare herself to Rosa Parks, who she claims was acting as a 'tester' … Plaintiff's self-aggrandizing comparison trivializes Rosa Parks … [and] was not well-received by the Court."). This should give the Court a flavor for the paucity of pleadings at issue in these cases.

Beyond this, the plaintiff in many of these cases alleged that the pen register was used by the *website itself* to collect the user's IP address. *See*, *e.g.*, ECF No. 25-1 at 1 ("Defendant's website utilized tracking software to obtain her computer's IP address and other data."); ECF No. 23-1 at 2 ("Defendant secretly deployed spyware at its website … Defendant uses the PR/TT

---

[3] Defendant's cited authorities summarily conclude that "[t]he analog of the number dialed" is "not the computer's own IP address or identifying information." *See*, *e.g.*, ECF Nos. 30-1 at 5, 30-2 at 5. This has no grounding in the actual text of the statute. *Shah*, 2024 WL 4539577, at *3 ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to Fandom's website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.").

[4] The legislative authority these decisions reference—"materials from the June 2015 Senate Amendments to CIPA"—"merely describe traditional telephone-based pen registers" but do not "state an intent to add a statutory requirement limiting pen registers to those traditional forms." *Shah*, 2024 WL 4539577, at *4 n.2 (distinguishing *Palacios v. Fandom*, ECF No. 27-1).

beacon to 'digitally fingerprint' each visitor…"). By contrast, Plaintiff alleges her IP address was collected by a *third party* via the "pen register." *See*, *e.g.*, Compl. ¶¶ 22, 34-37, 43-46, 49-51. This is an important distinction, as the collection of IP addresses by third parties is not necessary. *Shah*, 2024 WL 4539577, at *5 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers.").

Several of Defendant's authorities also address statutory standing, finding "there is no protected privacy interest in Plaintiff's IP address." *See* ECF No. 25-1 at 5; *see also* ECF No. 30-1 at 6. On the contrary, courts have roundly found statutory standing where, as here, Plaintiff's IP address was collected by third parties without consent and used to target her and other users with advertisements. Compl. ¶¶ 66-80; *see also*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *4 (finding statutory standing where "Plaintiff alleges that GumGum collects IP addresses to ascertain a user's location and target that user with advertisements tailored to their location") (cleaned up); *Moody*, 2024 WL 3561367, at *4 (finding Article III standing and statutory standing); *Shah*, 2024 WL 4539577, at *5 (addressing and finding statutory standing). Defendant's authorities did not involve robust allegations of tracking and usage by third parties beyond conclusory statements and so are inapposite. Defendant's authorities also relied on the false equivalency between "privacy" for the purposes of the Fourth Amendment and statutory standing, which the Supreme Court has rejected. *United States Dep't of Just. v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("The question of the statutory meaning of privacy … is … not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution."); *Greenley*, 684 F. Supp. 3d at 1051 ("[T]he fact that law enforcement can install a warrantless pen register without offending the Fourth Amendment is immaterial.").

Further, statutory standing under the CIPA requires a showing of "injur[y] by a violation of" the statute, not specifically to one's privacy. Cal. Penal Code § 637.2(a). While Plaintiff has shown her privacy was invaded, Defendant's improper monetization of Plaintiff's information through targeted advertising also suffices for such an injury, as both *Shah* and *Mirmalek* found. To the extent the Court requires, however, Plaintiff can allege additional facts regarding the privacy harms caused by Defendant's conduct. For instance, Sharethrough (Compl. ¶ 31) is a registered data broker in California,[5] while TripleLift (Compl. ¶ 47) is intimately involved in the sale of users to advertisers as a "supply side platform." Subsequent investigation by Plaintiff's counsel has not only elaborated on the privacy harms associated with the improper collection of IP addresses by third parties like these, but also the way in which these entities use IP addresses to identify otherwise anonymous website visitors, track said visitors across the Internet, and sell or disclose that information for pecuniary gain. *See*, *e.g.*, Complaint, *Weiler v. E! Entertainment Television, LLC*, Case No. 25STCV02509 (Cal. Super. Ct. Los Angeles Cnty.) (attached hereto as **Exhibit 1**). All of this conduct, of course, is caused by website operators like Defendant who install the "pen registers" on website users' browsers, and likewise enriches Defendant by generating advertising revenue. While such detailed allegations were not required by the *Shah*, *Mirmalek*, *Moody*, and *Greenley* courts to deny a motion to dismiss, Plaintiff can allege similar facts here as in *Weiler* if the Court requires.

---

[5] DATA BROKER REGISTRATION FOR SHARETHROUGH INC., https://oag.ca.gov/data-broker/registration/578001.

Respectfully submitted,

Y. Kopel

Yitzchak Kopel

CC: All Counsel of Record (via ECF)