UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZHIZHI XU, *individually and on behalf of all others similarly situated,*

                                    Plaintiff,

                    -v-

REUTERS NEWS & MEDIA INC.,

                                    Defendant.

24 Civ. 2466 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Zhizhi Xu brings this putative class action against defendant Reuters News & Media, Inc. ("Reuters"), which owns and operates Reuters.com (the "Website"). Xu's Complaint alleges that Reuters unlawfully collected the Internet Protocol ("IP") address of the device he used to visit the Website and disclosed this information to third parties.[1] The Complaint alleges only a violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. § 638.51(a). Xu filed it in federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

Reuters has moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the motion to dismiss under Rule 12(b)(1).

---

[1] An IP address "is a unique identifier for a device, which is expressed as four sets of numbers separated by periods." Dkt. 1 ¶ 23 ("Complaint" or "Compl."). It enables an internet-connected device to communicate with other such devices. *Id.* ¶ 24. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication . . . .") (cleaned up).

## I.     Background

### A.     Facts[2]

Reuters is incorporated in Delaware, and its principal place of business is New York, New York. Compl. ¶ 7. The Website "provides business, financial, national and international news to professionals . . . directly to consumers." *Id.* ¶ 55.

The Complaint alleges that Reuters integrated three web trackers— Sharethrough, Omnitag, and TripleLift (collectively "the Trackers")—into the Website's code to "collect data from users or perform other functions." *Id.* ¶ 56.[3] When an internet user first visits the Website, the Complaint alleges, its code causes the Trackers to be installed on the user's web browser. *Id.* ¶¶ 2, 21–23. Once the Trackers are installed and running on the user's web browser, they capture the "outgoing addressing information"—namely, the IP address—sent by the device to the Website. *Id.* ¶ 30 (cleaned up); *see also* ¶¶ 37, 46.[4] In contrast, the Trackers do not collect "the content" of a user's "electronic communications" with the Website. *Id.* ¶ 104. When a user clears the "cookies" on her web browser, the Trackers are uninstalled and "wiped out" from the browser's "cache." *Id.* ¶¶ 36, 45, 51.

Xu is a citizen of California. *Id.* ¶ 6. As alleged, between July 2020 and March 2024, Xu visited the Website multiple times from his desktop computer, and the Website's code caused the

---

[2] The facts in this section are all drawn from the Complaint. Dkt. 1. In resolving a Rule 12(b)(1) motion, the Court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Cangemi v. United States*, 13 F.4th 115, 129 (2d Cir. 2021) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Although Reuters has annexed exhibits to its motion to dismiss, *see* Dkt. 11, the Court does not consider this evidence, because the facts as alleged by the Complaint require dismissal.

[3] The Trackers "operate in the same manner and perform the same function." Compl. ¶ 87.

[4] "The Sharethrough Tracker . . . instructs the user's browser to send Sharethrough the user's IP address." *Id.* ¶ 34; *see also id.* ¶¶ 44 (same, as to Omnitag), 50 (TripleLift).

Trackers to be installed on his web browser. *Id.* ¶¶ 81–82. Reuters, and the third parties who operate the Trackers, used the Trackers to collect the IP address of his device. *Id.* ¶ 83. Xu did not consent to Reuters's installation of the Trackers, *id.* ¶ 88, and, as alleged, Reuters did not obtain court authorization to do so, *id.* ¶ 89. The Trackers (or more precisely, their third-party operators) allegedly "use the IP address of Website visitors . . . to serve targeted advertisements and conduct website analytics." *Id.* ¶ 62; *see also id.* ¶ 83 ("Defendant and Sharethrough used [Xu's IP address] collected by the Sharethrough Tracker to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and advertisers' revenue."). Xu is not alleged to have received such a targeted advertisement or otherwise exposed to marketing by Reuters or any other entity.

### B.    Procedural History

On April 1, 2024, Xu filed the Complaint. Dkt. 1. It brings a single claim under CIPA § 638.51(a). *Id.* ¶¶ 98–107. Section 638.51(a) prohibits any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). A "pen register," in turn, is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b). The Complaint alleges that each of the Trackers is a "pen register" and that, by installing these on Xu's web browser without his consent, Reuters violated § 638.51(a). *Id.* ¶¶ 2–3. The putative class consists of all California residents (1) who accessed the Website in California and (2) "had their IP address [sic] collected by the Trackers" without their prior consent or court authorization. *Id.* ¶ 91.

On May 24, 2024, Reuters moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Dkt. 9, and filed a supporting memorandum of law, Dkt. 10 ("Reuters Br."), and declaration, Dkt. 11 ("Ahuja Decl."). On May 29, 2024, the Court directed Xu to file any amended complaint or opposition to the motion by June 14, 2024. Dkt. 12. On June 21, 2024, Xu filed a memorandum of law in opposition. Dkt. 16 ("Xu Br."). On July 8, 2024, Reuters filed its reply. Dkt. 17 ("Reuters Reply Br.").

## II.    Discussion

Reuters argues that the Complaint does not allege that Xu has suffered a concrete injury in fact and therefore must be dismissed for lack of Article III standing. In the alternative, Reuters argues, the Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim.

Because the Court finds that Xu lacks Article III standing, it grants Reuters's Rule 12(b)(1) motion. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (court must confirm subject matter jurisdiction before reaching merits).

### A.    Applicable Legal Standards

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015); *see Makarova*, 201 F.3d at 113.

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). In resolving a motion to dismiss for

4

lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation marks omitted), although "jurisdiction must be shown affirmatively," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Article III of the Constitution limits the federal judicial power to the resolution of "cases" and "controversies." U.S. Const. art. III., § 2. An "essential and unchanging part" of this case-or-controversy limitation is the requirement that a plaintiff have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Thus, Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

"Standing is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up). Therefore, a plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). "[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560–61).

### B.    Application

Reuters argues that Xu lacks Article III standing because the Complaint does not allege that he has suffered a concrete injury in fact. *See* Reuters Br. at 5. The IP address of the device

5

used by Xu to visit the Website, Reuters maintains, does not constitute sensitive or personal information. Therefore, Reuters argues, its alleged collection and/or disclosure of this information to third parties does not give rise to a type of injury recognized at common law (or, for that matter, by contemporary legal authority).

Reuters is correct. As the party invoking federal jurisdiction, Xu bears the burden of establishing that he has suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citing *Lujan*, 504 U.S. at 560–561). "[W]hether a harm qualifies as 'concrete' hinges on 'whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 425). An allegation of "bare procedural violation[s], divorced from any concrete harm . . . does not suffice for Article III standing." *TransUnion*, 594 U.S. at 440. Injury in fact does not necessarily exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. And that a suit is brought as a putative class action "adds nothing to the question of standing." *Id.* at 338. Rather, the named plaintiff, like Xu, "must allege and show that [he] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s]." *Id.* at 338 n.7 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

Xu's Complaint does not come close to carrying that burden. It is sparse on facts particular to Xu.[5] And it does not allege that he has suffered the type of concrete injury that courts have commonly recognized as supporting standing, such as physical, monetary, or reputational harm. *See TransUnion*, 594 U.S. at 425 (tangible and intangible harms cognizable); *Maddox*, 19 F.4th at 63 (same). As alleged, Reuters collected the IP address of the "desktop browser" used by Xu to visit the Website, and (mis)used this information "to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost [Reuters's] and advertisers' revenue." Compl. ¶¶ 25–29. But the Complaint does not allege that Xu received any targeted advertising or was otherwise affected, much less that Xu was concretely harmed by any such advertising. *Compare* Xu Br. at 3 (arguing that Xu's IP address information was used for generic "marketing purposes"), *with McClung v. AddShopper, Inc.*, No. 23 Civ. 1996, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) (defendants used improperly collected data "to barrage that person's devices with unwanted email communications"). To state the obvious, Reuters's increasing its revenue, by itself, does not harm Xu. Nor does the Complaint allege that Reuters collected sensitive or personally identifying information data that could be used to steal Xu's identity or inflict similar harm. As a result, Xu has not pled the prospect of concrete harm based on expenses "reasonably incurred" to mitigate "a substantial risk of future identity theft or fraud." *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 286 (2d Cir.

---

[5] Xu's pleading appears nearly identical to at least six other complaints filed by Xu's counsel, Bursor & Fisher, P.A., in this District, in the span of eight months, alleging similar claims under CIPA. *See Vincent v. National Debt Relief LLC*, 24 Civ. 440 (LJL) (filed Jan. 19, 2024); *Gabrielli v. Insider, Inc.*, 24 Civ. 1566 (ER) (filed Feb. 29, 2024); *Gabrielli v. U.S. News & World Report, L.P.*, 24 Civ. 1685 (CM) (filed Mar. 5, 2024); *Chang v. Buzzfeed, Inc.*, 24 Civ. 2753 (NRB) (filed Apr. 11, 2024); *Motiani v. Future US LLC*, 24 Civ. 2931 (ALC) (filed Apr. 18, 2024); *Deivaprakash v. Conde Nast Digit.*, 24 Civ. 6503 (VSB) (SLC) (filed Aug. 28, 2024); *see also Lesh v. Cable News Network, Inc.*, 24 Civ. 3132 (VM) (transferred to S.D.N.Y. Apr. 24, 2024).

7

2023) (quoting *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021)).
The Complaint, in sum, alleges only a "bare procedural violation" of CIPA—that Reuters
collected the IP address of Xu's device without court authorization—entirely "divorced from any
concrete harm." *TransUnion*, 594 U.S. at 440. Such does not satisfy Article III standing.[6]

Federal courts have widely so held in dismissing similar claims. *See, e.g.*, *Lightoller v.
Jetblue Airways Corp.*, No. 23 Civ. 361, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023)
(dismissing for lack of standing because "a bare CIPA violation by itself is insufficient to
demonstrate Article III injury in fact"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D.
Cal. 2023) (same); *Byars v. Sterling Jewelers, Inc.*, No. 5:22 Civ. 1456, 2023 WL 2996686, at
*3–4 (C.D. Cal. Apr. 5, 2023) (same); *Massie v. Gen. Motors LLC*, No. 21-787, 2022 WL
534468, at *2, *5 (D. Del. Feb. 17, 2022) (same); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d
1182, 1188, 1189–91 (N.D. Cal. 2020) (no injury in fact where Facebook was alleged to have
collected "IP addresses showing locations where [plaintiff] accessed his Facebook account"); *Ji
v. Naver Corp.*, No. 21 Civ. 5143, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022)
(collection of "user and device identifiers" could not give rise to "a privacy injury"); *Smidga v.
Spirit Airlines, Inc.*, No. 2:22 Civ. 1578, 2024 WL 1485853, at *4 (W.D. Pa. Apr. 5, 2024)
("[C]ourts have held that even the collection of basic contact information by [] software or where
the plaintiffs merely visited the website are not [] concrete harms."); *see also Liau v. Weee! Inc.*,
No. 23 Civ. 1177 (PAE), 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (data leak of
"relatively quotidian *private* information"—"customers' names, email addresses, and phone

---

[6] Because "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability," *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989), the Court's determination that Xu lacks standing to sue in federal court does not foreclose a state court from considering his claim on the merits.

numbers, but not payment data or passwords"—did not give rise to a concrete harm (emphasis added)).[7]

Xu responds, principally, that because CIPA codifies a "substantive privacy right[]," Reuters's alleged violation of that statute necessarily gives rise to a concrete injury. Xu Br. at 3–4. This argument misapprehends Article III's injury-in-fact requirement. The Supreme Court has repeatedly "emphasized" that "Article III standing requires a concrete injury *even in the context of a statutory violation*." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341) (emphasis added). It "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (quoting *Spokeo*, 578 U.S. at 341). A legislature's "say-so," therefore, does not automatically confer standing for Article III purposes, *id.*; courts must "independently decide" whether a plaintiff has suffered a concrete harm. That is so because "Article III grants federal courts the power to redress harms that defendants cause

---

[7] The Complaint expressly disclaims that Reuters collected *the content* of Xu's communications. Compl. ¶ 104 ("The Trackers do not collect the content of Plaintiff's and the Class's electronic communications with the Website."). Xu's cause, therefore, is not advanced by his citation to cases in which the defendant was alleged to have tracked the internet activity of a website visitor or the content of electronic communications. *See, e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 131, 134 (3d Cir. 2015) (defendants allegedly circumvented users' "cookie blocker" settings to "compile the internet histories of users," "create detailed profiles on individuals," and "serve[d] targeted ads to users based on that activity"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("The plaintiffs do not merely allege that Facebook shared what we often describe as 'data'— basic facts such as gender, age, address, and the like. They allege that Facebook shared far more substantive and revealing content that users intended only for a limited audience, such as their photographs, videos they made, videos they watched, their religious and political views, their relationship information, and the actual words contained in their messages."), *aff'd*, 956 F.3d 589 (9th Cir. 2020); *McClung*, 2024 WL 189006, at *1 (defendants allegedly tracked "person's browsing activity across a network of thousands of online retailers and us[ed] it to barrage that person's devices with unwanted email communications"); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) (defendant, as alleged, tracked specific web pages viewed, search terms entered, mouse click events, and purchase behavior).

plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.*; *see also, e.g.*, *id.* at 425–26 ("Congress . . . may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is."); *Maddox*, 19 F.4th at 64 ("We need not decide whether state legislatures have the same power Congress enjoys to recognize or create legally protectible interests whose invasion gives rise to Article III standing; *TransUnion* determined that Congress itself enjoys no such power."); *cf. Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020) (Barrett, J.) ("[W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a 'close relationship' in kind, not degree. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy.").

Xu next argues that Reuters deprived him of "the right to control [his] personal information." Xu Br. at 5. That argument is also easily set aside. The Complaint does not allege that Reuters collected, from Xu, the type of information that courts have recognized as "personal"—or indeed, any information other than the IP address of *the device* used by Xu to visit the Website. *Compare, e.g.*, Compl. ¶ 23 ("The IP address is a unique identifier for a device . . . ."), *and id.* ¶ 104 (alleging that the Trackers do not collect "the content" of any "electronic communications"), *with U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of *information concerning his or her person*." (emphasis added)). To the extent Xu terms IP addresses "personal" information, that characterization is contradicted by his pleading that an IP address consists of "addressing information" that "enables" an internet-

connected device "to communicate with another device" on the web. Compl. ¶¶ 23, 24, 104.[8]  In

other words, it is information "voluntarily conveyed" by an internet user, to a third party, in

order to direct its servers. *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010) (citation

omitted); *see also United States v. Ulbricht*, 858 F.3d 71, 96–97 (2d Cir. 2017); *United States v.*

*Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).  For this reason, courts have explained, IP

addresses "constitute addressing information and do not necessarily reveal any more about the

underlying contents of communication than do phone numbers." *Forrester*, 512 F.3d at 10.  And

the cases are legion holding that a person does not have a legitimate expectation of privacy in an

IP address which he voluntarily turned over to a third party in order to access its website. *See,*

*e.g.*, *Ulbricht*, 858 F.3d at 96 ("The recording of IP address information and similar routing data,

which reveal the existence of connections between communications devices without disclosing

the content of the communications, are precisely analogous to the capture of telephone numbers

at issue in [*Smith v. Maryland*, 442 U.S. 735 (1979)]."); *Forrester*, 512 F.3d at 510; *United*

*States v. Caira*, 833 F.3d 803, 806–09 (7th Cir. 2016) (IP addresses are "broadcast 'far and wide

in the course of normal internet use,'" such that there is no reasonable expectation of privacy in

them (quoting *United States v. Weast*, 811 F.3d 743, 747 (5th Cir. 2016))); *Christie*, 624 F.3d at

573 (same); *United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts

---

[8] The Complaint alleges that a "device's state, city, and zip code can be determined" from its IP address, Compl. ¶¶ 23, 24, but it does not allege that the Trackers used by Reuters determined the location of *Xu's device*. Even assuming *arguendo* that it had done so, Xu does not identify any authority recognizing a person's zip code as "personal information," let alone that its collection and/or disclosure qualifies as a concrete injury in fact. *Cf. Cooper v. Bonobos, Inc.*, No. 21 Civ. 854, 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (no injury in fact where leaked information included customers' "addresses, phone numbers, . . . email addresses, and IP addresses"); *Liau*, 2024 WL 729259, at *5 (similar).

have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information.").

Finally, Xu's brief, liberally construed, suggests that his injury resembles harm traditionally cognizable under the common law tort of public disclosure of private facts. *See* Xu Br. at 4–5. *TransUnion* instructs courts to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." 594 U.S.at 424 (citation omitted). Relevant here, courts have recognized that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public." Restatement (Second) of Torts § 652D ("Restatement"); *see Machleder v. Diaz*, 801 F.2d 46, 59 (2d Cir. 1986) (citing Restatement). A person so injured "may recover for the harm resulting to his reputation from the publicity." Restatement § 652H; *see TransUnion*, 594 U.S. at 434 (defamation was "close historical or common-law analogue" for subset of claims); *Gadelhak*, 950 F.3d at 462 (likening harm from receipt of unwanted text messages to tort of intrusion of seclusion). Xu's analogy (to the extent he attempts one) fails because the Complaint does not allege that he has suffered the type of harm associated with public disclosure of private facts. *See TransUnion*, 594 U.S.at 432, 434. Nor does the Complaint allege any facts supporting that Reuters collected or disclosed any information concerning Xu's "private life" that would be offensive to a reasonable person. Restatement § 652D; *accord In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 351 (E.D. Pa. 2023) ("The protections which existed traditionally at common law existed only as to private information."); *Heeger*, 509 F. Supp. 3d at 1189–91. To reiterate, the Complaint does not plausibly allege that Reuters collected anything other than the IP address of

Xu's device. And Xu has not identified any legal authority—contemporary or historical—that recognizes a protected privacy interest in IP address-like information, such that Reuters's disclosure of it would inflict a concrete harm. Thus, Xu's alleged injury does not have a "close relationship" to a type of harm recognized by courts as providing a basis for a lawsuit.

"No concrete harm, no standing." *TransUnion*, 594 U.S. at 442. Because Xu has failed to establish that federal jurisdiction exists, the Court must dismiss this action.

## CONCLUSION

For the foregoing reasons, the Court grants Reuters's Rule 12(b)(1) motion and dismisses the Complaint without prejudice, including to refiling in state court if appropriate. The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: February 13, 2025
    New York, New York

13